# JANUARY TERM, 1871, AT LANSING.

———◆———

## Warren Gilbert v. Asa A. Kennedy.

*Trespass quare clausum: Measure of damages: Certainty: Experts: Pasturage: Cattle: Home or distant market.* A plaintiff in trespass will not be denied the right to recover the actual damages he has suffered because their nature is such that they cannot be accurately measured; and when from the nature of the case adequate damages cannot be measured with certainty by a fixed rule, all facts and circumstances tending to show such damages as are claimed in the declaration, or their probable amount, should be submitted to the jury, to enable them to form, under proper instructions from the court, such reasonable and probable estimate as in the exercise of good sense and sound judgment they shall think will produce adequate compensation.—*Allison v. Chandler, 11 Mich., 542,* cited and approved.

Where the plaintiff was deprived of the profitable use of his own pasture for his own stock, by the tortious conduct of the defendant in turning in his cattle with the plaintiff's, and in consequence of the overfeeding of the pasture the plaintiff's cattle suffered, the damages to which the plaintiff will be entitled will not be merely the value of pasturage in the vicinity, but the value of the growth and increase in weight which the cattle might reasonably have been expected to attain but for the over-feeding caused by the trespass; and to show this the testimony of farmers, graziers, and drovers, having experience of cattle and that mode of feeding, is competent. It would also be competent to show the market value of the stock in the vicinity but for the overfeeding, and what was the reduced value in the same market in consequence of the overfeeding; and the difference in price, *per* head and *per* pound, in cattle of different weights and conditions. The value in a distant market could only be shown so far as it tended to control the home market; the measure of damages being what the cattle would have been but for the injury to the pasture by the trespass, and the reduced amount caused by the injury, to be estimated up to and at the time of bringing the action,—unless the cattle had been sold prior to that day,—then at the date of the sale.

When a party, having been tortiously deprived of his pasturage for his cattle, is obliged to pasture them on his meadow, the measure of damages will be what the value of the use of the meadow land would have been to him *as meadow*, not what he could have obtained for it for pasturage.

*Damages: Present or prospective.* Damage to the plaintiff's cattle resulting from a loss of feed occasioned by the tortious occupation of plaintiff's pasture by defendant's cattle is not included in the damage to the pasture caused by such occupation; and the condition of the pasture, its value as such for future use, at the time of the commencement of the action, are proper subjects of inquiry in estimating damages which had then been sustained.

*Contributory negligence.* The rule that a party aggrieved by a trespass will not be allowed to recover damages resulting from his neglect to employ the obvious and ordinary means of preventing or lessening them, is simply one

GILBERT v. KENNEDY.

of good faith and fair dealing; it will not prevent his recovering for such damages as he may have actually suffered, and which could not have been by reasonable diligence averted.

*Examination of witnesses: Stating objection.* When a question put to a witness is objected to, and the form of the objection is so general that a particular ground of objection might not readily appear to be involved, unless the attention of the court is called to it, the party objecting will not, upon a writ of error, be entitled to any benefit from his general objection.

*Pleading and evidence: Trespass.* In an action of trespass,—the declaration being full and specific as to the means by which the damages claimed were occasioned,—evidence of damages concerning which the declaration was silent, and contained no allegation which would include them, is inadmissible.

*Evidence: Agreement: Tender.* After a dispute had arisen between parties concerning the existence of an agreement for a lease, a tender of a sum of money as rent by the party affirming the lease to the party denying it, has no tendency to prove the agreement.

*Heard October 19, 1870. Decided January 4.*

Error to Lenawee Circuit.

This was an action of trespass, *quare clausum fregit,* brought by Asa A. Kennedy in the Circuit Court for the county of Lenawee, against Warren Gilbert. The alleged trespass consisted in turning thirty-two head of cattle of the defendant's upon premises known as the Pitcher farm, and in the occupancy of Kennedy.

The plaintiff alleges special damage, averring that he was a drover, engaged in the business of buying and selling cattle, and buying cattle for and transporting them to New York and other eastern markets for sale, and also selling the same, and also in the business of farming; that during all the time of the trespass he owned and was possessed of a large number of neat cattle, sheep and horses, which he had purchased and intended for market, and a like number which he kept for use as such farmer; and that he depended upon and was in need of the sole and exclusive use of such pasture; all of which defendant knew. He also alleges that by reason of the trespasses, the pasture, which would otherwise have been sufficient, became and was insufficient, poor, and unfit for the suitable pasturage of his cattle, horses and sheep, and not being able

to procure other proper and sufficient pasturage, and in consequence, the said cattle, etc., were prevented from gaining in flesh and value, as they would have done, and lost in flesh, became poor and thin, depreciated in weight and value, and those intended for market were unfit for market sale, and those intended for use were unfit for use; that in consequence of the trespass, the plaintiff was obliged to retain, and did retain and use as pasture, for pasture of said cattle, other land which he had designed and wished to have ploughed and used for planting and raising of corn, other grain and hay. He further alleges that, before the commission of said acts and wrongs, he had bargained the undivided half of his cattle intended for market, to Isaiah Teachout, with the agreement that said cattle were to be kept on said close and certain other pasture which said Isaiah was to furnish, if this pasture should prove insufficient, and that he would have sold said cattle at a large profit but for the wrongful acts of the defendant; and on account thereof, Teachout declined to consummate the bargain and purchase the undivided half of said cattle. He further alleges that by said wrongful acts, he was prevented from purchasing divers other cattle, horses and sheep for market, and lost large gains and profits which he might have made on the purchase and sale thereof.

The defendant pleaded the general issue, and gave notice that the plaintiff had leased the premises to him to pasture thirty-five head of cattle from the first day of May, 1868, to the first of July, 1868, and from thence the whole pasture to the end of the season; and that he entered into said close in accordance with said terms of leasing.

The cause was tried by a jury; the controversy mainly arising upon the measure of damages for the injury suffered by the plaintiff. The circuit judge charged:

"The plaintiff claims, in his declaration in substance,

that on the 28th day of April, 1868, he was in the quiet and peaceable possession of certain premises, known as the Pitcher farm, situated in the township of Rome, in this county; that he was the owner of sixty head of cattle, which he intended to pasture on said farm during that season, and to sell when they were fit for market for fat cattle during the season; that he placed said cattle on said farm April 30, 1868; that said farm would afford sufficient pasture to keep said sixty cattle in good condition, and that said cattle would increase in weight a large amount, by pasturing on said farm during the summer of 1868; that the said defendant, wrongfully and unlawfully, and without the leave or license, and against the will of the said plaintiff, placed on said farm thirty-two head of his own cattle and kept them there until after the commencement of this suit—ten head April 28th, and twenty-two head May 4, 1868; that the cattle of the defendant, so placed and kept on said farm, in addition to the cattle of the said plaintiff, cut up and consumed the herbage and grass growing upon said farm to that extent, that the plaintiff's said cattle shrank and fell off in weight to a large amount, and that the plaintiff's cattle failed to gain and increase in weight to a large amount, and as much as they would have gained, if the defendant had not turned his cattle on to said premises; that by reason of said shrinkage and failure to increase in weight and flesh, the quality of said cattle was diminished in value to a large amount; that by the said wrongful acts of the said defendant, the said farm was damaged for pasture for the balance of season, to a large amount; that he was compelled to take some of said cattle off from said farm and pasture them on another farm, to prevent further shrinkage, which was worth a large amount.

"The defendant pleads the general issue, and gives notice

that he will prove, on the trial, that the plaintiff, before the 28th day of April, 1868, leased to the defendant the pasture on said farm, from the 1st day of May until the 1st day of July, for thirty-five head of cattle, and the whole of said pasture thenceforth until the 1st day of December, 1868.

"If you believe, from the evidence, that the defendant turned his cattle on to said premises wrongfully, and without the consent of the plaintiff, and that on the 28th day of April the plaintiff owned sixty head of cattle, which he intended to pasture on said premises, the plaintiff is entitled to recover in this action against the defendant the damages he has sustained as follows:

"1st. The value of the amount said cattle would have gained and increased in weight, if they had had the use of the whole of the pasture on said premises up to the commencement of this suit, or up to time they were sold, if sold before the commencement of this suit.

"2d. The value of the pasture on his own farm for the time any of said cattle were pastured on said farm before the commencement of this suit.

"3d. The damages done to the said Pitcher farm, by being overfed by the defendant's cattle, before the commencement of this suit.

"4th. The value of the amount of shrinkage of said cattle up to the commencement of this suit, or until said cattle were sold, if sold before the commencement of this suit, if said shrinkage was caused by the defendant's cattle being placed on said farm, provided the plaintiff used reasonable diligence to procure other pasture.

"5th. The loss, if any, which the plaintiff sustained in the quality of said cattle being diminished in value by shrinkage to a failure to gain and increase in flesh."

To each of which charges and instructions by the said circuit judge, the defendant excepted.

The jury found a verdict for the plaintiff, and assessed his damages at the sum of eight hundred and seventy-five dollars; and the judgment entered thereon the defendant below brings into this court by writ of error.

*C. A. Stacy* and *Andrew Howell*, for plaintiff in error.

PROFITS.—The court had no right to allow the defendant in error to introduce testimony to prove prospective profits as damages.—*State v. Smith, 31 Mo., 566 ; Gardner v. Field, 1 Gray, 151 ; St. Peter's Church v. Beach, 26 Conn., 355 ; Warren v. Cole, 15 Mich., 265.* A verdict therefore for the profits which might have been made on the goods wrongfully taken, in addition to their value, is erroneous.— *Button v. Collins, 12 Cal., 457.* The market value of the property, and not its value to the plaintiff, is the measure of damages.—*Gray v. Stearns, 28 Vt., 1.* A charge to the jury that the defendant must make the plaintiff good for all the actual injury sustained by him, resulting directly and naturally therefrom, was erroneous.—*Oviatt v. Pond, 29 Conn., 479.* That the rule is applicable to torts as well as to contracts was held by our Supreme Court.—*Warren v. Cole, 15 Mich., 274.* And its applicability to actions for torts upon real estate was fully recognized by the Supreme Court of New York.—*Walrath v. Redfield, 11 Barb., S. C. R., 369 ; Affirmed, 18 N. Y., 457.*

In actions upon contract, it is well settled that the party complaining of a breach of contract, can only recover the damages *necessarily* resulting from such breach, and he cannot conduct himself in such a manner as to make the damages necessarily burdensome.—*11 Barb., 373 ; 2 Greenlf. Ev., § 256 ; Wilson v. Martin, 1 Denio, 602.* The same

rule is applicable to torts where there has been no willful injury to the rights of another.

DAMAGES.—Where successive actions may be brought for a continuous wrong, as in the case of continued trespass upon land, the damages in each suit are very properly limited to those sustained by the plaintiff at its commencement.—*Caldwell v. Murphy, 1 Duer, 233; Bathishill v. Reed, 37 Eng. L. & Eq., 317; Smith v. Peet, 9 Exch., 161; Sedgwick on Dam. (139), n. 1 (109); Blunt v. McCormick, 1 Denio, 283; Cole v. Sprowl, 35 Maine, 161; Town of Troy v. Cheshire R. R. Co., 3 Fost. N. H., 83; Robinson v. Bland, 2 Burr., 1,077 and 1,086; Fettretch v. Leamy, 9 Bos., 510.*

In this case the plaintiff was allowed to prove by his witnesses double damages. In his proof first showing the value of the pasture consumed by the defendant's cattle before the 24th of June, and then showing the decreased value of the pasturage after the 24th of June, by reason of its being fed before the 24th of June by Gilbert's cattle.

*A. L. Millard* and *Eldredge & Walker*, for defendant in error.

There was no error in the charge of the court—at least none of which the plaintiff in error could complain. If there was error, it was in restricting the damages too much. The rule of damages as given to the jury, restricted them, (1.) To what the plaintiff's cattle would have gained in weight, if they had had the whole pasture, up to the commencement of the suit, or up to the time they were sold, if sold before the commencement of the suit; (2.) The value of the pasture used by the plaintiff on his own farm, for the time any of the cattle were pastured there, before the commencement of the suit; (3.) The damage

done to the Pitcher farm by being overfed by the defendant's cattle, before the commencement of the suit; (4.) The value of the amount of shrinkage of the cattle up to the commencement of the suit, or until they were sold, if sold before the commencement of the suit, if the same was caused by the defendant's cattle being placed on the farm, provided the plaintiff used reasonable diligence to procure other pasture; and (5.) The loss, if any, which the plaintiff sustained in the quality of the cattle, caused by their being diminished in value by the shrinkage or failure to gain in flesh.

These items of damage are all laid in the declaration, and are the natural, direct and proximate result of the wrongful act of the defendant.—*Chandler v. Allison*, 10 *Mich.*, 460; *same v. same*, 11 *id.*, 564; *Burrell v. The N. Y. & S. Salt Co.*, 14 *id.*, 34.

CHRISTIANCY, J.

Kennedy, the plaintiff below, who was a farmer and drover engaged in the business of buying, selling and grazing cattle for market, had a lease of a farm known as the Pitcher farm, which he had hired for the year 1868 for the purpose of grazing cattle intended for sale, relying mainly upon their growth and increase in the meantime for the increase in their market value. He had bought cattle during the winter and early spring in reliance upon the use of this farm for their pasturage; and on the 30th of April, 1868, which was about the usual time for turning out such cattle to pasture, he drove sixty head of the cattle to the farm (which was several miles from his residence), and turned them in, but found ten head of defendant's cattle had been turned in by the defendant two days before, which were still there. Upon inquiry of the defendant why

he had done this, the latter claimed to have entered into an agreement with the plaintiff giving him the right to pasture thirty-five head of cattle there for the season, and insisted upon his right and declared his intention of doing so.

Plaintiff denied any such contract or right. He admitted that some conversations had been had with him by the defendant, who was desirous of obtaining such right, but insisted he had never consented to allow any of defendant's cattle there without the consent in writing of John Pitcher, the lessor, and of his wife,—Pitcher being then in the State Prison at Jackson,—and he and his wife, as plaintiff insists, being opposed to allowing defendant to have anything to do with the farm, and, as plaintiff claims, the defendant having some time before made the attempt to get such assent and failed. The defendant, however, as shown by the evidence, claimed that plaintiff had assented to his pasturing cattle there without any such condition, and he also claimed that he had obtained the assent of Pitcher and wife, though not in writing.

The plaintiff, on the occasion above alluded to, declared his intention of turning off defendant's cattle. Defendant declared, in substance, that he should turn them on again as often as plaintiff should turn them out, intimating that, as he lived nearer to the farm than the plaintiff, it would be more trouble to the plaintiff than to him, and that if any suit was to be commenced the plaintiff would have to commence it.

Plaintiff, having gone home and taken counsel, returned the next day and found that the defendant had removed some of the interior fences and used them to repair the outside fences, and that the ten head of cattle were still on the farm. Plaintiff turned them out. But when he went to the farm two days after, found that defendant had turned them in again. He again turned them out, and the defend-

ant again turned them in, and on the 4th day of May turned in twenty-two head more, making thirty-two head, which continued there with the sixty head of the plaintiff's cattle (while the latter remained there), and were kept there during the summer.

Plaintiff, finding it useless longer to turn them off, and that his only remedy was to bring an action, commenced the present action of trespass on the 24th day of June, 1868.

The evidence strongly tended to show (though there was evidence on the part of the defendant to the contrary) that, though the pasture on the farm was sufficient for the sixty head of plaintiff's cattle, and if they could have had the whole feed that they would have gained largely in weight up to the 24th of June; yet, that with the addition of the thirty-two head of the defendant's cattle, the pasture was overstocked and the feed so eaten up and destroyed, that the plaintiff's cattle actually lost largely, instead of gaining in weight, while he continued to keep them there, and, that they were also worth, in consequence, less per pound than they otherwise would have been. The evidence tended to show how much they had lost in weight, how much they would have gained with the whole pasturage, and how much less they were worth per pound than they would have been with the whole pasturage. It also tended to show that pasturage was scarce and high that season; that it is generally all engaged early in the spring; that plaintiff, finding his cattle failing, endeavored to procure pasture for them elsewhere, offering as high as six dollars per acre for some for the balance of the season after the 30th of May, but was unable to procure any in that region; that his own home farm was already sufficiently stocked, and he could not properly put any of these cattle upon it without turning them on to ground he

had kept for meadows, and which, to prevent further injury as far as possible, he was compelled to use for pasture, and that on the 30th of May he took twenty-four head of these cattle from the Pitcher farm and put them to pasture upon his meadows for want of other pasture; that for the same reason, finding his cattle still failing upon the Pitcher farm, he took eleven more of them to his own farm about the 20th of June, and about the same time sold the balance, twenty-five head, at the Pitcher farm.

That a part of those taken to the home farm were sold there from the 20th to the 23d of June, a part of them were shipped to Painesville, Ohio, and sold for $70 per head about the same time; that they were weighed at Adrian and again at Painesville, and the weight at both places shown, as well as the market value; and that eleven head of the cattle taken to the home farm about the 20th of June were not sold till after the commencement of this suit; that those put on the home farm, May 30th, had gained some before sold.

Evidence was also given tending to show the value of pasturage on the home farm, the market value of cattle of various weights and conditions at Buffalo, and that these cattle were intended for the Buffalo market, their market value at home, and that the eastern market governed the prices in the home market, and that the plaintiff would not have sold the cattle at the times they were respectively sold, and in the condition they were, but for the lack of pasturage.

The evidence also tended to show that, by reason of the overstocking of the Pitcher farm by the putting in of defendant's cattle, in addition to the plaintiff's, the pasture was injured for the balance of the season after the 24th of June, and how much.

Among other causes of damage, the plaintiff was allowed

to show that his cattle were injured and their growth retarded by reason of defendant's cattle being strangers to plaintiff's cattle, causing them to fight and race, and the amount of damage from this cause.

The nature of the evidence was such that it is difficult to conceive how the defendant could have been mistaken upon the point, whether there was or was not an agreement on the part of the plaintiff for allowing the defendant's cattle to be pastured on the farm, or how the jury, in finding against the defendant on this point, could at the same time have found that he acted in good faith and not with the deliberate intention of committing a trespass and setting the plaintiff at defiance. If there was no such agreement, in fact, we can discover no evidence fairly tending to show that defendant could have honestly believed that there was; and we think all the evidence which tended to negative the agreement, tended equally to show that defendant *knew* there was none. The court did not, and was not requested to, submit this precise question to the jury; and we think it was immaterial to the proper disposition of the case, for reasons more fully stated hereafter.

No special request was made for a charge of any kind. The jury found a verdict for the plaintiff below of $875, and the case is brought to this court by bill of exceptions and writ of error.

One hundred and twelve errors are assigned upon the record, five of which are to the charge given, and all the others upon exceptions taken to the admission and the rejection of evidence.

The more important questions (and about half the exceptions) relate to the measure of damages. These we shall first consider; but, instead of taking up the several exceptions *seriatim*, which would lead to intolerable polixity, we shall endeavor to ascertain the principle which should

govern in respect to damages, and to determine how far those principles have been observed or violated.

The damages to be awarded should be such as *adequately* to compensate the actual loss or injury sustained. This is an obvious principle of justice from which we see no reason to depart. But in the application of the principle, difficulties often arise in ascertaining, with anything like accuracy, the actual damages which the plaintiff has suffered from the injury; or what sum will produce adequate compensation.

Some cases are such in their nature and circumstances, as to furnish an obvious rule by which a just and adequate compensation can be readily and accurately measured; and whenever, and so far as this is the case, such rule should be applied in actions of tort as well as in those upon contracts, as we held in *Allison v. Chandler, 11 Mich., 542,* and in *Warren v. Cole, 15 Mich., 274.*

But such is the almost infinite variety of circumstances under which torts may be committed, that cases will often occur in which, 1st. No reliable data, no element of certainty can be found by which to measure with accuracy the actual amount of the damages, though it is evident to the court and jury that large damages have resulted from the injury; and, 2d. Cases in which there will be elements of certainty as to a part only of such damages, leaving it certain that the actual damages must be largely beyond what can be thus accurately measured. Now, in the first class of cases, are the jury to give merely nominal, or what is the same thing, *no* damages, and is the injured party to obtain no redress, because the case happens to be one which does not furnish a rule for their accurate measurement? And in the second class of cases is he only to recover so much as can be measured with certainty, though it may be *equally certain* that this does not cover the tithe of the damages really sustained? This might be well enough if the want

of certainty inherent in the nature of the case were prop-
erly attributable to the fault of the plaintiff. But *he* did
not make the case; this was made against his will by the
defendant, who chose his own time, place and manner of
committing the wrong, and the plaintiff is compelled to
grapple with the case thus made for him; and therefore such
a rule, as one of universal application, can only become just
when trespassers become so considerate of the rights of
others as to commit their trespasses only in cases and under
circumstances where the damages can be calculated by a
fixed and certain rule. To deny the injured party the right
to recover any actual damages in such cases, because they
are of a nature which cannot be thus certainly measured,
would be to enable parties to profit by, and speculate upon,
their own wrongs, encourage violence and invite depreda-
tion. Such is not, and cannot be the law, though cases
may be found where courts have laid down artificial and
arbitrary rules which have produced such a result.

There can be no rule of law founded upon any just or
intelligible principle, which, in actions of trespass at least,
requires any higher degree of certainty in the evidence upon
which the damages are to be estimated, than in reference
to any other branch of the cause. Juries in such cases
have as much right, and it is as clearly their duty to draw
reasonable and probable inferences from the facts and
circumstances in evidence, in reference to the amount of
damages, as in reference to any other subject of inquiry in
the case. And in those cases of trespass, or those features
of a particular case, where, from the nature of the case,
adequate damages cannot be measured with certainty by a
fixed rule, all the facts and circumstances tending to show
such damages as are claimed in the declaration, or their
probable amount, should be submitted to the jury to enable
them to form, under proper instructions from the court,

such reasonable and probable estimate, as in the exercise of good sense and sound judgment they shall think will produce adequate compensation. There is no sound reason in such a case, as there may be, to some extent, in actions upon contract, for throwing *any part* of the loss upon the injured party, which the jury believe from the evidence he has sustained; though the precise amount cannot be ascertained by a fixed rule, but must be matter of opinion and probable estimate. And the adoption of any arbitrary rule in such a case, which will relieve the wrong-doer from any part of the damages, and throw the loss upon the injured party, would be little less than legalized robbery.

Whatever of uncertainty there may be in this mode of estimating damages, is an uncertainty caused by the defendant's own wrongful act; and justice and sound public policy alike require that he should bear the risk of the uncertainty thus produced; and this not only when the trespass is willful and wanton, without a claim of right, but whenever the property, though claimed by him, is in the possession of another, and he, taking the law into his own hands, makes himself judge in his own cause, and, knowing his right to be disputed, seizes upon the property without a judicial trial of his rights.

These principles were laid down with their proper qualification, and the difference between this class of cases and those arising upon contract fully explained by this Court in *Allison v. Chandler* above cited, the soundness of which we have seen no reasons to doubt.

We are, then, to inquire whether any, and if so what elements of certainty are discoverable in the facts and circumstances of the present case, which may serve as a rule by which adequate compensation can be measured. It is not claimed by the counsel for plaintiff in error that the damages were to be governed, in any respect, by the amount

of rent the plaintiff (below) was paying, which was $550 per year. Any rule based upon this would manifestly fail to give adequate compensation; and, when we consider that the pasturing season was less than half the year, and more valuable for some portions of that half than others, it would lack the element of certainty as well as justice.

But it is urged that a party against whom a trespass is committed has no right, by his own action or by neglecting the obvious and ordinary means of preventing or lessening the damages, to make them more than they otherwise would have been. This, as a general principle, is true. Whether it is applicable at all to the facts of the present case, is only important so far as it bears upon the duty of the plaintiff, when the defendant's cattle were wrongfully turned in, to remove his own cattle from the pasture before they should be injuriously affected by the over-feeding caused by defendant's cattle, or to prevent, at any particular time, further injury from this cause.

The plaintiff in error, adopting the general rule alluded to, makes it his premises for the conclusion that such was the duty of the plaintiff; and that, not having removed his cattle when the defendant's were turned in, or as soon as he was aware of the injury therefrom to his own, he cannot recover of the defendant more than pasturage was worth, because, still basing his argument upon this assumed duty (for it has no other basis), the plaintiff should, at once, have obtained the necessary pasture for his cattle elsewhere; and that, therefore, the only proper rule of damages in the case is what such pasture would have been worth. Is this reasoning sound as applied to the facts of this case? As between the plaintiff and the defendant, did any such duty rest upon the former?

The rule in question (if based upon the supposed duty) is simply one of good faith and fair dealing. If a man

tortiously injures the roof of my dwelling, and I obstinately leave it in that condition, and having the opportunity, refuse or neglect to repair, until the furniture and bedding in the house are injured or destroyed by the rains, I cannot recover of him for this injury to my furniture and bedding which I might have avoided by timely repairs. And if a man come to my field, where my cattle are grazing, turn them out into the street, and turn his own cattle in, thus ousting me from the possession and claiming and holding exclusive possession against me, I cannot leave my cattle in the street to starve, and then charge him with their full value, if it be practicable, by reasonable effort on my part, to procure other pasture or feed for them; but I can recover only such damages as I have suffered beyond what I might have avoided by reasonable diligence. But if he come to the same field and wrongfully turn his cattle in *with* mine, neither taking nor claiming any exclusive possession, and, as often as I turn his cattle out, he persists in turning them in again; till I find it impracticable to keep them out without coming to blows, and cease to attempt it, and my cattle from this cause are deprived of necessary feed, and I resort to a suit as my only remedy, which is substantially the present case, at *what particular point* in this series of tortious conduct does good faith to him require me to turn my own cattle from my own field and find pasture for them elsewhere, to save him from liability for their further injury from his repeated or continuous wrongs? Have I not a better right to insist that he shall, and to presume that he will, relent and cease the continuance of his tortious acts, than he has to claim that I shall remove my cattle from my own field and leave it to him? Is it not rather his duty to cease the continuance of his wrongs, than mine to give up my acknowledged right? The damages in such a case are in no proper sense

increased by any act or negligence of mine, but by the continuance of his own tortious conduct. As to the question of duty, as well might it be said if he had repeatedly assaulted and beaten me and my family in my own house, and declared his intention of repeating the process as long as we should remain there, it would be my duty to remove myself and family from the house to avoid increasing the damages which might otherwise accrue from his further continuance or repetition of the like conduct.

There was no duty resting upon the plaintiff at any time to remove his cattle and procure pasture for them elsewhere, if this could have been done. In perfect good faith, the plaintiff had a right to keep his cattle there, and to hold the defendant liable for the continuous injury arising from his continuous wrong. But if the plaintiff chose to take any of his cattle out to prevent further injury, it would then, as to such cattle, become his duty to make a reasonable effort to procure other feed or pasture for them in the most prudent way he reasonably could.

But the evidence tended to show that plaintiff did make such efforts, in good faith, to hire other pasture for his cattle, offering for some as high as six dollars per acre for the balance of the season after the 30th May, and was unable to obtain it. The evidence is direct and positive to this effect, and we find no evidence in the case fairly tending to show the contrary. There was some evidence tending to show what pasturage was worth, but none of the witnesses pretend to say it could have been obtained for that price at that time, and in that neighborhood; while some of the same witnesses do say it would have been difficult to obtain pasture at that season of the year, it being generally engaged early in the spring; and they must, therefore, be understood to intend what parties could afford to pay for it, or what the owners could have afforded

to take for it, had it been obtainable.  The plaintiff's damages, therefore, as to the cattle removed, and after their removal, are not to be restricted to what such pasturage would have been worth, if attainable, if he can satisfy the jury, that under the circumstances of the case, he must have suffered more than this standard would give.  And, whether attainable or not, this standard cannot be applied at all as to any of the cattle while they remained on the Pitcher farm.

As in the case of *Allison v. Chandler*, therefore, the plaintiff is not to be compelled to part with the use of his pasture on the Pitcher farm, or the meadow land on his own (to which he was compelled to remove a part of the cattle) for such sum as they might be worth to others for pasturage, if, as the evidence tended to show, they were of greater and peculiar value to him in his particular circumstances and business, and the actual damage to him must have been greater.

There being practically no market value for pasturage when there was none in the market, that element of certainty is wanting, even as to those cattle which were removed from the Pitcher farm to the home farm of the plaintiff for pasturage; and, as it could not apply to the others at all, and there being no other element of certainty by which the damages can be *accurately* measured, resort must be had to such principle or basis of calculation applicable to the circumstances of the case (if any be discoverable) as will be most likely to *approximate* certainty, and which may serve as *a guide* in making the most probable estimate of which the nature of the case will admit; and, though it may be less certain as a scale of measurement, yet if the principle be just in itself, and more likely to approximate the *actual damages*, it is better than any rule,

however certain, which must certainly produce injustice, by excluding a large portion of the damages actually sustained.

Such a principle was found in the present case in the growth and increase in weight which the cattle might reasonably have been expected to have attained (but for the over-feeding of the pasture caused by the trespass), and the increase in value consequent upon such increase in weight. It is evident the plaintiff should be entitled to all the benefit to be derived from such growth and increase, and that he ought to recover such a sum as would place him in as good a position as if the trespass had not been committed. This was the principle upon which the plaintiff proceeded, and to which his evidence was mainly directed; and we think, so far as it applied, it was the only proper theory upon which he could proceed, unless, indeed, he had elected to take such reduced damages as the mere value of pasturage would give him.

There is undoubtedly some room for error and uncertainty in estimating damages upon this basis; but it is the best of which the case will admit. It affords the elements of reasonable certainty, and though the growth and increase would be liable to some contingencies, the good sense of a jury of practical men may be relied upon to make allowance for such as might reasonably be considered probable. We think, therefore, the testimony of farmers, graziers and drovers having experience and knowledge of cattle and that mode of feeding, was clearly admissible; and that the estimates of such men, based upon years of experience, would not be likely to vary materially from the truth; and as bearing upon the question of increase, it was competent to show the condition of the cattle when put in, their previous mode of keeping (so far as it might affect subsequent growth), and the actual con-

dition of the cattle when taken away. If this actual condition and weight when put in, and when taken out, or when sold, had been admitted or proved and not disputed, it would not have been permissible or necessary to resort to the opinion of witnesses on these points or as to the shrinkage which would be likely to take place from feeding in pasture thus overstocked. But the cattle not being weighed when put in and again when taken out, and only a part of them when sold, and the evidence being conflicting, we think the estimates made by experts from observation of the cattle as to what the weight was, as well as of others, who had not examined these cattle at the time but knew the condition of the pasture as to what they might be expected to gain on or shrink in a pasturage thus stocked, or overstocked, was admissible.

It was also competent to show what would have been the market value of the cattle at any time about which it became material to inquire, but for the overfeeding, and what was the reduced market value by reason of the overfeeding by defendant's cattle, and the difference in price *per* head and *per* pound in cattle of different weights or conditions. But the market value in each case would be that of the home market, and not that at Painesville or Buffalo, though these also might be shown so far as they tended to control the home market or regulate the home value.

On a careful examination, we find no error in the admission or rejection of evidence touching the question of market value.

It is objected that to allow the plaintiff to recover for probable growth of the cattle and the *consequent* increase in value, is to allow him to recover for probable or anticipated profits, which it is insisted is not allowable. There are many cases, as shown in *Allison v. Chandler*, in which

22 MICH.—18.

GILBERT v. KENNEDY.

probable future profits may be recovered as damages. But the obvious answer to the objection here urged is, that the calculation of damages based upon the probable growth and *consequent* increased value of the cattle, and allowing the plaintiff to recover the difference between the value as it would have been but for the trespass and the value as reduced from this by the trespass, does not in any respect involve the question of profit or loss of the investment or business. And the damages upon the basis mentioned would be precisely the same, whether the enterprise or investment was or would have been a profitable or a losing one. In both cases alike the plaintiff was equally entitled to recover damages equal to the difference between what the cattle would have been, but for the injury to the pasture by the trespass, and the reduced amount caused by such injury. The evidence introduced by the plaintiff upon the question, whether that kind of business was profitable that season, was clearly irrelevant and immaterial. But whether it could have prejudiced the plaintiff in error we need not decide, as the case must be reversed on other grounds. The plaintiff, however, had a right to show that May and June were the months in which cattle increased most by pasturage, as this bore upon the question of probable increase.

But the question arises here, up to what time the plaintiff was entitled to estimate the probable increase, and the shrinkage in consequence of the trespass, and what period is to govern for the market value. The charge of the court, as to all the cattle sold prior to the institution of the suit, in effect fixed the period up to which increase and shrinkage were to be estimated, at the time the cattle were sold. Of this I think it clear the defendant (plaintiff in error) had no right to complain. But I think the plaintiff below was entitled to have the probable increase

in weight and the consequent increase in value estimated up to the 24th of June, the day of the commencement of the suit, and to fix the market value at that period; and so the court below seem to have held in the admission of evidence upon those points, though not in the charge, and the specific question as between those two periods does not appear to have been raised on the trial. The difference in the result could be but very slight, as the cattle sold before suit seem all to have been sold from the 20th to the 23d of June.

There is no evidence tending to show that the market value varied between the 20th and 24th of June, nor, in fact, for the month of June; and it is fairly inferable from the evidence and the course of examination that no such difference was claimed.

The evidence tended to show that, but for the injury caused by overfeeding, the plaintiff's cattle would have been worth (some of the testimony refers to the 20th and some to the 24th of June) about one cent per pound more than by reason of the trespass it was worth, and it tended to show how much less the weight was from the same cause, and the difference in price per head was also given. This difference thus estimated included, of course, not only the probable increase (but for the injury to the pasture), but the actual shrinkage caused by the injury below the standard of the cattle before the trespass. And though there was evidence tending to show that plaintiff had intended his cattle for sale in June and July, if the market should be favorable, yet it also showed that he would not have sold them when he did, in the condition they were, if he had had or could have obtained pasture at any reasonable rate. If, therefore, the testimony tends to show that he would or might (for it hardly tends to show that he would) have sold them before the 24th, if they

had been in good condition, yet it shows that he was deprived of the opportunity of thus selling them in a fit condition by the defendant's acts. Plaintiff had a right to have kept them all, as long as he pleased, and, of course, up to the time of the suit, and to have availed himself of the advantage of their increase in weight and value to that time. He was deprived of this option and the value reduced by the wrong of the defendant. Under such circumstances the defendant cannot be heard to object, that the plaintiff might have sold them sooner if the trespass had not been committed. We may presume he would not have done so, unless, upon the whole, he found it for his advantage; and if it would have been so, then the loss has still been the same to him in being deprived of the opportunity.

But the depreciation from actual shrinkage thus caused by the trespass below the standard of the cattle prior to the trespass, can only be estimated up to the time of sale, as to so many of them as were sold before the 24th. After the sale the shrinkage ceased, or rather the plaintiff could not suffer, nor the defendant be responsible for it. The principle is this: the plaintiff was entitled to recover the difference between what the cattle would have been worth on the 24th of June but for the injury to the pasture by the trespass, and what those sold were worth when sold; and, as to those taken to the home farm and not sold till after the 24th, the difference between what they *would have* been and what they *were* worth, on the 24th. This gives the defendant the benefit of such increase before sale as may have been attained by those cattle taken to the plaintiff's home farm, the first twenty-four head of which, at least, were shown to have gained after being taken there and before sale.

The charge of the court in reference to such shrinkage

was in accordance with these principles, and entirely correct, but several of the questions put to the witnesses called for an estimate which would include shrinkage up to the 24th of June, and the answers called out such estimates. The admission of these questions would have been erroneous had they been objected to on that specific ground; but no objection seems to have been made on this particular ground, but merely a general objection to the question without stating any ground. From the shape of the questions, which were quite general, this particular ground of objection might not readily appear to be involved, and the attention of the court ought, in fairness, to have been called to it; and upon the weight of authority, I am inclined to think the plaintiff in error would not, under the circumstances, be entitled to any benefit from the general objection upon writ of error.

The increase in weight and value which the cattle would have attained, together with the shrinkage, as above explained, include all the damages the plaintiff was entitled to recover in respect to the twenty-five head of cattle sold directly from the Pitcher farm about the 20th June. And the principles we have above laid down, so far as they apply to the cattle removed to the home farm and pastured there, is based upon the hypothesis (the question upon which was fairly left to the jury and sustained by them) that the plaintiff used due diligence to obtain pasture for them when he took them from the Pitcher farm, and that upon his own farm was the best he could obtain without giving as high a price as the damage to his own farm from pasturing them there would amount to; and the evidence tended to show that the feed upon which they were placed there was good,—a fact which does not seem to have been disputed.

But, as to those cattle which the plaintiff, to avoid

further loss was compelled to remove to, and pasture upon his own farm, the damages already mentioned do not cover the whole of the plaintiff's loss occasioned by the trespass. He was entitled to recover, in addition to those already mentioned, 1st, a reasonable compensation for the expense and trouble of removing them to the home farm, and 2d, the damages or injury to him of pasturing them on the home farm. And, as to this, as already intimated, he should not be confined—as the Circuit Judge in his ruling upon the admission of evidence seems to have supposed—to what he could have got for use of meadow land for pasturage, nor what it would have been worth to him for pasture, had it been already in use as such. But he had a right to recover what the use of the meadow land would have been worth to him as *meadow*, and any injury to it as such. Had he hired meadow land for the purpose of another person, he must have paid upon this basis ; and he is therefore entitled to a like compensation for his own. But in this particular the court erred in favor of the plaintiff in error, of which he cannot complain.

The plaintiff was allowed, under objection, to give evidence tending to show special damages to his cattle, arising from the fact, that defendant's cattle were strange cattle to his, thereby causing the cattle to race and fight. This we think was erroneous, for the plain reason that no such ground of damage was claimed in the declaration, which was very full and specific as to the means by which the damages claimed were occasioned, but is silent as to any such cause as this, and contains no allegation which would include it. It was no notice to the defendant of such a claim. And though the objection made to the evidence was general, yet the court trying the cause must always be supposed to know what is in issue by the pleadings. The ground of the objection should therefore, I think, be considered too obvious

to require it to be specifically stated; and it is one which could not be cured without at least striking out the testimony, or expressly withdrawing it from the consideration of the jury.

There were some other slight errors in the admission and rejection of testimony on the question of damages, had the proper grounds of objection been stated (some questions being based upon hypotheses not warranted by the facts proved), but which for want of specific objections cannot be made grounds for reversing the judgment. As to the objection that the plaintiff was allowed to prove damages for the loss of a bargain in the sale of his cattle to Teachout, the evidence does not seem to have been introduced for this purpose,—no price being stated,—but merely to show how Teachout came to be connected with the transaction; and the subject was so intimately connected with the question of the agreement between plaintiff and defendant, and that of the assent of Pitcher and wife, that we see no error in its introduction for such purposes.

This sufficiently disposes of all questions of damages so far as plaintiff's cattle are concerned and the pasturage upon the home farm. But above and beyond these, the evidence tended to show, that by reason of the overfeeding by defendant's cattle being put in, the pasture at the commencement of this suit had been permanently injured for the balance of the season; in other words, that the value of the pasture for use that season was, on the 20th and 24th June, much less than it would have been but for such overfeeding, and the amount of such injury. This was an item of damages in no way included in any of the damages already noticed, and without the recovery of which the plaintiff would be the loser to that amount by the wrong complained of.

It is true that the plaintiff could not recover in this

action damages accruing after its commencement; but these damages had accrued at *that time*,—the pasture either for the plaintiff's use, or to be let to others, was *at that time* worth so much less; and it is therefore clear that no subsequent action could have been sustained for this damage.

This item of damages was therefore properly allowed to go to the jury. The charge in this particular was also correct. And upon careful examination of the whole charge, we find no error in it of which the plaintiff in error can complain; but this does not cure the errors in admitting improper evidence, which we have already noticed especially, as the charge did not expressly withdraw it from the jury, if, in fact, this would have cured the error.

The particular errors assigned in reference to the question of damages are, we think, sufficiently met by the principles above laid down, and the particular points already noticed.

Several other errors are assigned upon the admission and rejection of evidence upon other points, most of which, however, we deem it unnecessary to notice, as they will not all be likely to arise again upon a new trial, and those which do, will be likely to be presented in a somewhat different shape.

It is assigned for error that Elias, a witness for defendant below, who had purchased some of the cattle, was allowed, on cross-examination, to testify as to what plaintiff said was the reason for his selling at that time. He had testified on his direct examination to a conversation with plaintiff at the time of the sale, about the cattle then on the Pitcher farm. The plaintiff was therefore entitled to show what he had stated as his reason for selling, if it was a part of the same conversation, otherwise not. One of the questions and the answer to it seem to have been objectionable on this ground.

There was no error in allowing this witness to state to

what he attributed the fact of the cattle weighing more at Painesville than at Adrian. Their weight at Painesville was only material as bearing upon their weight at Adrian, about which there was a dispute; and it was competent to show how the weight at Painesville was affected by feeding and watering at any time after they left Adrian and before weighed at Painesville. As to the proof offered by defendant of a tender of rent, it is sufficient to say, that a tender after the dispute had arisen, of such portion of the rent as defendant claimed he was by the agreement to pay, could have no legitimate tendency to prove that such an agreement had been made. At most it was but an argumentative assertion of such an agreement, at a time and under circumstances where his direct assertion to the same effect would not be evidence.

The state of feeling on the part of Pitcher and his wife, or either of them, towards the defendant, was admissible as bearing upon the question, whether either had assented to lease to defendant, or to allow his cattle to be kept upon the premises, about which the testimony was conflicting. But it was the state of feeling *during* the *attempted negotiation* between plaintiff and defendant, and not as it existed prior to that time, and prior to the time plaintiff had first leased the premises. The conversation, therefore, at the jail before the time mentioned, and which was offered by the defendant, was properly rejected.

It is proper to say here in reference to the question of the assent of Pitcher and wife, or either, that, if the jury should believe the plaintiff's testimony, that the assent required was to be obtained in writing, as the condition of allowing defendant's cattle to be put on, and that was not obtained in writing, no merely verbal assent of Pitcher or wife would be of any avail. It should also be noticed that Pitcher was the party having the right to give or withhold

22 MICH.—19.

GILBERT *v.* KENNEDY.

assent, as the lessor; and the question of the wife's assent was only material so far as plaintiff had made that a condition, and so far as it bore upon the credibility of witnesses. So far as her verbal consent was material, the effect of any conversation upon the points with the defendant, could not be affected by what she might say to others after he had left, and in his absence.

The judgment must be reversed with costs of this court and a new trial awarded.

The other Justices concurred.