### COCKTAIL ARBOR, INC., v. DRIEBORG.

1. CORPORATIONS—DIRECTORS—MANAGERS—ACCOUNTING—EVIDENCE.
    In suit by corporation and two of its directors against defendant, the remaining director and manager for an accounting, record *held*, to sustain finding of trial court that defendant had not accounted to the corporation for all moneys received under his management.

---

Effect of criminal or wrongful conduct on the part of the person asking restitution, see Restatement, Restitution, § 140.

Measure of recovery when money benefit was. received, see Restatement, Restitution, § 150.

2. SAME—ACCOUNTING—COMPARATIVE RECEIPTS AND COSTS—EVIDENCE.

In suit by corporation for accounting by former manager of its restaurant and retail liquor business for which no bank account was maintained or regular bookkeeper or cashier ever employed, evidence of comparative receipts and costs during period of defendant's management and a subsequent period *held,* admissible and some evidence on which the trial court could make determination.

3. ACCOUNTING—MEASURE OF DAMAGES—INFERENCE.

In corporation's suit for accounting by manager of its business, while damages may not be determined by mere speculation or guess, evidence will be sufficient if it shows the extent of damages as a matter of just and reasonable inference, although the result be only approximate, and defendant who affords no help to the court in determining damages may not complain that the method adopted does not afford an exact and precise measurement.

4. DAMAGES—MEASUREMENT—ACCURACY.

Damages arising from tortious conduct of defendant may not be denied merely because they cannot be measured with absolute accuracy.

5. APPEAL AND ERROR—CORPORATIONS—FINDING OF COURT—STOCKHOLDINGS—RECORD.

In suit between corporation and two directors against remaining director, finding of trial court that each stockholder was entitled to a certain number of shares of stock pursuant to an agreement which had been made between the parties is not disturbed under record presented.

6. CORPORATIONS—ACCOUNTING BY EMBEZZLING MANAGER—SALARY.

In suit for accounting by director of plaintiff corporation who was also its manager, defendant *held,* entitled to salary which had been paid him over period of somewhat less than three years, where first year's operation was satisfactory to all parties and corporation would have had to pay someone to perform the services; the claim that a faithless employee is not entitled to any wages having been found untenable under the circumstances in a chancery suit.

Appeal from Kent; Hoffius (Cornelius), J.   Submitted April 16, 1940.   (Docket No. 94, Calendar No. 41,089.)  Decided September 6, 1940.  Rehearing denied October 10, 1940.

Bill by Cocktail Arbor, Inc., a Michigan corporation, and John C. Hirsack and Jacob Ryskamp, directors, against William J. Drieborg for an accounting, rescission of stock purchase, recovery of salary paid, and injunction to restrain interference with the present management of plaintiff corporation. Cross bill for accounting and surrender of stock. Decree for plaintiffs. Defendant appeals. Plaintiffs cross-appeal. Affirmed.

*Warner, Norcross & Judd* and *Joseph Shulsky,* for plaintiffs.

*Dean S. Face,* for defendant.

SHARPE, J. This is a chancery action commenced by plaintiff corporation and two of its directors against the remaining director and former manager for an accounting, reimbursement of salary paid, rescission of stock purchased and an injunction to restrain defendant from interfering with the present management of the corporation.

The business to which plaintiff corporation has succeeded was originally promoted by Mr. Hirsack and Mrs. Scott. Mr. Hirsack paid in $1,250, and Mrs. Scott, $625. In the fall of 1936, defendant joined the partnership and invested $625. Mrs. Scott continued in the business as a partner until January, 1937, at which time the remaining partners purchased her interest for $1,500. In August, 1938, the two partners organized a corporation and plaintiff Jacob Ryskamp was elected as a third director. At the time of the organization of the corporation, the stock was owned in the proportion of 13 parts by Hirsack and 6 parts by Drieborg. The bylaws of the corporation provided that one of the directors could be employed as manager only by unanimous consent

of the directors. Mr. Drieborg was made manager and so continued until immediately before the commencement of the present suit.

From the time the business was started in September, 1936, neither the copartnership nor the corporation carried any bank account although plaintiff Hirsack had been authorized by the directors to open one. Nor was a regular bookkeeper or cashier ever employed. The cash register was not provided with a complete set of keys showing different classifications of cash sales. Defendant Drieborg had no training as a bookkeeper, but from September, 1936, until July 11, 1939, defendant checked the cash register daily and took out the cash except what was deemed necessary to commence business the following day. During business hours, all of the employees handled the money. Mr. Drieborg had actual charge of the business and often waited upon customers. The other two directors never took an inventory nor checked the cash on hand. The first year of the management under Mr. Drieborg, September, 1936, to September, 1937, was satisfactory to Mr. Hirsack, and during that period the liquor cost averaged 33 per cent. of sales and the beer cost 46 per cent. of sales.

In July, 1939, plaintiff directors becoming dissatisfied with the management of the defendant, employed a detective agency to inquire into the management of the bar and restaurant end of the business, and as a result of its findings, the board of directors on July 11, 1939, notified defendant that he was discharged as manager.

The trial court made a finding of facts which are substantially as follows: that the first year's operation was apparently satisfactory to all persons interested; that shortly thereafter defendant, Drieborg, began to complain of the small salary paid him and

it was later increased; that at a directors' meeting it was agreed that the two stock-holding directors should have equal ownership in the corporation, defendant, Drieborg, paid plaintiff Hirsack $1,200, and each now holds 1,300 shares of stock in the corporation; that Hirsack began to suspect defendant, Drieborg, of misappropriating funds; that Drieborg failed to register all sales on the cash register; that at the close of each day's operations Drieborg only accounted for the amount of sales actually registered upon the cash register; that upon one occasion Drieborg received a check for $34.40 made out to the corporation, indorsed it, and received credit for the amount on a private purchase of a diamond without noting it upon company records; that upon another occasion defendant receipted for $10 cash for the return of a mixing machine and made no record of the reimbursement to the corporation; that under the new management the patronage is about the same as under the prior management; that the lowest cost per cent. under Drieborg's management for any month was 42.94 per cent., and the highest 54.97 per cent., while the lowest cost per cent. under the present management was 38.93 per cent., and the highest 40.48 per cent.; that under the present management the receipts have increased and the costs decreased; that in September, 1939, under the new management the sales amounted to $2,866.84 with cost of various items sold $1,160.48 or a cost per cent. of 40.48 per cent.; that the sales reported by Drieborg from August 1, 1938, to June 30, 1939, of $27,572.77, with costs of $12,894.05, was not an accurate account of the business of the corporation; that the sales that should have been reported by Drieborg was the amount of $31,852.88 and that Drieborg is indebted to the corporation in the sum of $4,280.11, and that amount together with the sum of $321.64, the amount

defendant admits having retained of corporation funds, makes a total shortage of $4,601.75.

The trial court also found as a fact that each stockholder is entitled to 1,300 shares of stock in the corporation; that Drieborg is entitled to retain the salary paid him while he was manager; and that defendant be restrained from selling or disposing of his stock until the corporation is reimbursed for the amount embezzled by defendant.

Defendant appeals and contends that the trial court was in error in holding that the defendant embezzled any money of the corporation. In our opinion the record sustains the holding of the trial court that defendant did not account to the corporation for all moneys received under his management.

The more serious question is to determine the amount of the corporation losses that may be charged against defendant. We have in mind that only two items have been definitely proven in addition to the sum of $321.64 retained by defendant when he was removed as manager. It is urged by defendant that other methods used by the trial court to determine the amount of defendant's defalcations was error. We recognize the impossibility of any court determining with exactness the amount of losses that the corporation has suffered in the case at bar. In our opinion the evidence of comparison of operations was admissible and afforded the trial court some evidence by which he could make a determination.

The general rule in cases of this kind is well expressed in *Story Parchment Co.* v. *Paterson Parchment Paper Co.,* 282 U. S. 555 (51 Sup. Ct. 248), where the court said:

"While the damages may not be determined by mere speculation or guess, it will be enough if the evidence show the extent of the damages as a matter of just and reasonable inference, although the result

be only approximate. The wrongdoer is not entitled to complain that they cannot be measured with the exactness and precision that would be possible if the case, which he alone is responsible for making, were otherwise.''

In *Gilbert* v. *Kennedy*, 22 Mich. 117, the defendant had placed cattle on plaintiff's pasturage, thus depleting it for plaintiff's cattle, as a result of which plaintiff's cattle lost weight and sustained other injuries and plaintiff lost the benefit of the seasonable market for cattle. We there held that plaintiff was entitled to introduce evidence from previous experience in such kind of business and said:

''Cases will often occur in which, *first,* no reliable data, no element of certainty can be found by which to measure with accuracy the actual amount of the damages, though it is evident to the court and jury that large damages have resulted from the injury; and, *second,* cases in which there will be elements of certainty as to a part only of such damages, leaving it certain that the actual damages must be largely beyond what can be thus accurately measured. Now, in the first class of cases, are the jury to give merely nominal, or what is the same thing, *no* damages, and is the injured party to obtain no redress, because the case happens to be one which does not furnish a rule for their accurate measurement? And in the second class of cases is he only to recover so much as can be measured with certainty, though it may be *equally certain* that this does not cover the tithe of the damages really sustained? This might be well enough if the want of certainty inherent in the nature of the case were properly attributable to the fault of the plaintiff. But *he* did not make the case; this was made against his will by the defendant, who chose his own time, place and manner of committing the wrong, and the plaintiff is compelled to grapple with the case thus made for him. * * * To deny the

injured party the right to recover any actual damages in such cases, because they are of a nature which cannot be thus certainly measured, would·be to enable parties to profit by, and speculate upon, their own wrongs, encourage violence and invite depredation. Such is not, and cannot be the law. * * *

"There is no sound reason in such a case, as there may be, to some extent, in actions upon contract, for throwing *any part* of the loss upon the injured party, which the jury believe from the evidence he has sustained, though the precise amount cannot be ascertained by a fixed rule, but must be matter of opinion and probable estimate. And the adoption of any arbitrary rule in such a case, which will relieve the wrong-doer from any part of the damages, and throw the loss upon the injured party, would be little less than legalized robbery.

"Whatever of uncertainty there may be in this mode of estimating damages, is an uncertainty caused by the defendant's own wrongful act; and justice and sound public policy alike require that he should bear the risk of the uncertainty thus produced. * * *

"There is undoubtedly some room for error and uncertainty in estimating damages upon this basis; but it is the best of which the case will admit."

In *Allison* v. *Chandler,* 11 Mich. 542, plaintiff was required to move his store to a new location as a result of certain affirmative acts of defendant. In that case, the trial court refused to permit plaintiff to introduce evidence concerning the business done at his old location and the drop in business on removal to the new location. In reversing the case, we said:

"Since, from the nature of the case, the damages cannot be estimated with certainty, and there is a risk of giving by one course of trial less, and by the other more, than a fair compensation—to say nothing of justice—does not sound policy require that

the risk should be thrown upon the wrongdoer instead of the injured party? However this question may be answered, we cannot resist the conclusion that it is better to run a slight risk of giving somewhat more than actual compensation than to adopt a rule which, under the circumstances of the case, will, in all reasonable probability, preclude the injured party from the recovery of a large proportion of the damages he has actually sustained from the injury, though the amount thus excluded cannot be estimated with accuracy by a fixed and certain rule. Certainty is doubtless very desirable in estimating damages in all cases; and where, from the nature and circumstances of the case, a rule can be discovered by which adequate compensation can be accurately measured, the rule should be applied in actions of tort, as well as in those upon contract. Such is quite generally the case in trespass and trover for the taking or conversion of personal property; if the property (as it generally is) be such as can be readily obtained in the market and has a market value. But shall the injured party in an action of tort, which may happen to furnish no element of certainty, be allowed to recover no damages (or merely nominal), because he cannot show the exact amount with certainty, though he is ready to show, to the satisfaction of the jury, that he has suffered large damages by the injury? Certainty, it is true, would thus be attained; but it would be the certainty of injustice. And, though a rule of certainty may be found which will measure *a portion* and *only a portion* of the damages, and exclude a very material portion, which it can be rendered morally certain the injured party has sustained, though its exact amount cannot be measured by a fixed rule; here to apply any such rule to the whole case is to misapply it; and so far as it excludes all damages which cannot be measured by it, it perpetrates positive injustice under the pretense of administering justice.

"The law does not require impossibilities; and cannot, therefore, require a higher degree of certainty than the nature of the case admits. And we can see no good reason for requiring any higher degree of certainty in respect to the amount of damages, than in respect to any other branch of the cause."

See, also, *Stern Co.* v. *Friedman,* 229 Mich. 623.

In the case at bar, no help was received from defendant to aid the trial court in determining the amount of damages sustained by plaintiff corporation and defendant may not now complain of the method adopted in this case.

In this case, both parties complain of the stock equalization. Plaintiff urges that he has a right to rescind the transaction while defendant contends that the 700 shares of stock purchased by him were purchased from plaintiff Hirsack and not from the corporation. In our opinion, the sale of stock to Drieborg was made with the full knowledge of plaintiff Hirsack and also the defendant. The record sustains the testimony of Mr. Ryskamp:

"The bargain was that Mr. Drieborg was to pay Mr. Hirsack $1,200 to equalize their shares so that they would each have a half share in the Cocktail Arbor, and the procedure as to the stock was left to the attorney. They both left it up to their attorney as to whether he was to get a certain amount of Mr. Hirsack's stock, or whether they were to issue new stock."

We find no valid reason for upsetting the agreement made by the parties.

Plaintiffs urge in their cross-appeal that the trial court was in error in allowing defendant wages for

the time that he was manager of Cocktail Arbor, upon the theory that a faithless employee is not entitled to any wages. In deciding this issue, we have in mind that this is a chancery suit and that the trial court gave careful consideration to the equities of the case. We recognize, as he did, that no complaint was made of defendant's management during the first year that the business was in operation; and that defendant performed services for the corporation. Had these services not been performed by defendant, someone else would have had to perform them with probably an expense to the corporation equal to the amount paid defendant. Considering all of the circumstances and the issues involved, we come to the conclusion that the trial court meted out justice to all interested parties.

The decree is affirmed, with costs to plaintiffs.

BUSHNELL, C. J., and CHANDLER, NORTH, MC-ALLISTER, and BUTZEL, JJ., concurred with SHARPE, J. WIEST, J., concurred in the result. The late Justice POTTER took no part in this decision.