JESSE A. GWALTNEY v. SCOTTISH CAROLINA TIMBER
COMPANY.

*Action for Damages—Injury to Fish Trap—Floatable Stream,
What is Not—Negligence—Evidence.*

1. A stream which is only capable of floating logs in occasional freshets is not in law a floatable stream, while, if the freshet should arise from natural rainfall for a sufficient period to make a stream useful to the public, it would be considered floatable; yet a temporary rise, passing quickly away, is not sufficient, even if the freshet should continue for two or three days and be reasonably expected every year.

2. In an action for damage to a dam and fish trap caused by floating logs in a stream not "floatable," the plaintiff need not show that the defendant was negligent in handling the logs.

3. When no specific instruction was asked for on the trial of an action, an exception that the instruction given was too general will not be considered on appeal.

4. In an action for damages to a dam and fish trap by floating logs on a non-floatable stream, evidence of the value of the annual output of the fishery is competent to show the amount of the damage done.

5. An action will lie for trespass and injury to property in favor of one who, while not the owner, is in possession, and the damages will be estimated according to his interest therein.

6. It is not improper for counsel, in rehearsing the testimony to the jury, to use the stenographic notes when they are read as aids to his memory and are according to his recollection.

CIVIL ACTION, for damages alleged to have resulted to the plaintiff's dam and fish trap by floating logs placed in the French Broad river by the defendant, tried at Spring Term, 1893, of BUNCOMEBE Superior Court, before *Graves, J.*

The following were the issues :

"1. Was the plaintiff the owner of the dam and fish trap at the time of the alleged injury ?

"2. Was plaintiff in the possession of the dam and fish trap at the time of the injury alleged in the complaint ?

"3. At the time of the alleged injury was the French Broad river, at the point of the alleged injury, such a stream that business men may calculate that, with tolerable regularity as to the seasons, the water will rise to and remain at such height as will enable them to make it profitable to use it as a highway for transporting logs to market or mills lower down ?

"4. Was the dam and fish trap destroyed by the conduct of defendant?

"5. At first the Court made the fourth issue as follows : ' Was the dam and fish trap destroyed by the negligent conduct of defendant,' but in charging upon that issue struck out the word ' negligent?' "

The case is sufficiently stated in the opinion. Verdict and judgment for the plaintiff. Appeal by defendant.

*Messrs. Thomas A. Jones* and *F. A. Sondley*, for plaintiff.
*Messrs. Charles A. Moore* and *J. B. Batchelor*, for defendant appellant).
(

MacRae, J.: The complaint and answer are set out in full in 111 N. C., 574. On the former trial, after the testimony was closed, his Honor, the presiding Judge, intimating the opinion that, assuming the facts as testified to be true, the plaintiff was not entitled to recover, he submitted to a nonsuit and appealed.

In the opinion of this Court delivered by the Chief Justice, it was held that there was testimony proper to be submitted to the jury in order that they might determine whether the French Broad river, at the point of the alleged wrong and injury was what is now called a floatable stream. It was there said : " It is not necessary in order to establish the easement in a river to show that it is susceptible of use continuously during the whole year for the purpose of floatage, but it is sufficient if it appear that business men may calculate that, with tolerable regularity as to the seasons, the water will rise to and remain at such a height as will enable them to make it profitable to use it as a highway for transporting logs to market or mills lower down." There was entire unanimity in this Court as to what constituted such a stream; for Mr. Justice AVERY, in a very able dissenting opinion, used the same words, with the addition : " When prudent business men may regulate their expenditures with reference to the anticipated rise, the stream becomes a factor in conducting the commerce of the country." The divergence of views was then upon the relative rights of the persons floating timber down and the riparian proprietors along such streams.

When the case was tried the second time, his Honor submitted to the jury an issue framed upon the language above quoted, as follows : " 3. At the time of the alleged injury was the French Broad river at the point of the alleged injury such a stream that business men may calculate, that with tolerable regularity as to the seasons, the water will rise to and remain at such a height as will enable them to make it

profitable to use it as a highway for transporting logs to market or mills lower down?" In his instructions to the jury on this issue, his Honor said : " It is not necessary that the stream is of such volume all the year, or all the season, but it might be for a time long enough to be beneficially used. I cannot say how long a time the stream must be capable of floating in each year, but a stream which is only capable of floating logs in occasional freshets is not in law a floatable stream. Now, whether the French Broad was such a stream, becomes a question of fact for you to determine from all the evidence, and I can give you no further assistance on this point. The burden rests upon the defendant." Again, his Honor charged : " Upon the question whether the French Broad is floatable, you must look to the testimony of all the witnesses; all the evidence bearing on that question ; the size of the stream, the country it drains, the size of the valley; that witnesses testify that it was floatable above Asheville, but it does not necessarily follow from the fact that it is float- able above Asheville that it is floatable below." In answer to an oral request from defendant's counsel, the Court charged : "If the freshet should arise from natural rainfall for a sufficient period to make it useful to the public, it would be considered a floatable stream. Temporary rise, passing quickly down, is not sufficient to make a stream floatable, and would not be sufficient if the freshet should continue up for even two or three days and be reasonably expected every year."

This question was so examined and discussed by us upon the former hearing, that we deem it only necessary now to give our unqualified approval to the issue and the instructions thereon, and thus dispose of all of defendant's exceptions to this part of the charge. The issue itself was not excepted to ; indeed, there were no exceptions to the issues, but to the striking out of the word " negligent " from the fourth issue, so as to make it read, " Was the dam and fish trap destroyed

by the conduct of defendant?" and to the fifth issue, "What damage, if any, has the plaintiff sustained?"

We think that the contentions of the parties were carefully and fairly presented by the issues, and that if there was an injury to plaintiff's property by reason of floating the logs, it was of no moment in this action, certainly after the jury found that the river was not a floatable stream, whether the injury was caused by the negligence of defendant, or otherwise, if it in truth were caused by the act of defendant.

We will next address ourselves to the exceptions of the defendant to the charge of the Court upon the measure ot damages.

"If the river is not a floatable stream, and the dam was destroyed in consequence of its (defendant's) acts, the defendant is liable to plaintiff for such actual damages as naturally resulted from its acts.

"The measure of damage would depend on the right the plaintiff had in the fish trap and dam: This damage should be for the injury to his property in the dam and trap, and would be greater for the destruction of property to which he had a title in fee simple, than to a mere property in possession.

"Upon the question of damages, the jury were further instructed that, in no view, was the defendant liable for vindictive damages; that the measure of damage, if the plaintiff was entitled to any, was the actual value of the injury done. The cost of building the dam was not the measure, nor was the cost of rebuilding the measure of damage; but the jury must, from all the evidence, fix the amount of the loss actually sustained by plaintiff as the measure of damage, if plaintiff is entitled to any damage."

These instructions cut off from the jury any consideration of prospective or speculative damages, and confined them to compensation for the injury. The loss actually sustained was to be determined by the jury. Sutherland on damages,

§§ 1011, 1012. It was a very general proposition which his Honor should, and doubtless would, have explained and elaborated, if he had been so requested, but "if the parties desire more specific instructions, they must ask for them at the proper time." *Morgan* v. *Lewis*, 95 N. C., 296.

Several exceptions embrace testimony as to the annual "output" of the fishery.

Plaintiff testified: "I caught large quantities of fish; I cannot say how much; supplied my family and laborers; went to the traps twice a day; sold $500 worth a year; the yearly value of products of traps was $1,000."

Witness Morrison testified: "Gwaltney, during my stay, sold a great many fish at the hotel; I can't say how often."

We think all of this testimony was competent, not for the purpose of showing prospective or speculative damages, or as to what he might have made later, but for the injury, for in this view it would not have been admissible; but "all the facts and circumstances constituting, or proximately connected with the trespass, tending to show its character and immediate consequences, may be proved, both to show the amount necessary to a just compensation for the injury, and the motive of the defendant, to enable the jury to determine whether the wrong is such that punitory damages should be given, and, if so, how much. In the absence of facts warranting such damages, the principle of compensation governs, and, to ascertain the amount, the mode of proof must be adapted to the facts of each case."

"Where the trespass suspends or impairs the enjoyment of the premises, compensation may be given on the basis of the rental value, in the absence of any ground for special damages, or in addition to such damages, and, if the premises are put out of repair, the cost of repair will be an additional item." The defendant who destroyed the sluice-way to a mill, was held liable for the sluice-way and consequential damages to plaintiff for having his mill stopped. Suther-

land on Damages, § 1015. Where defendant wrongfully destroyed part of plaintiff's milldam, damages were assessed for the cost of repairing the dam, and also for interruption to the use of the mill, or diminution of profits.

PER CURIAM: "The question is raised as to consequential damages, the interruption to the use of the mill, and the diminution of the plaintiffs' profits on that account were alleged in the declaration and proved on the trial, and we think this was right. The plaintiffs are entitled to recover all the damages they suffered by reason of the trespass." *White* v. *Mosely*, 8 Pick., 356. Consequential damages, to be recovered in an action of tort, must be the proximate consequence of the act complained of; therefore the tortious conversion of plaintiff's mule would not authorize damages for loss of crop thereby.

"If the action were for damage for breach of contract, the rule would be to give such damage, as being incidental to the breach as a natural consequence thereof, may be reasonably presumed to have been within the contemplation of the parties." *Sledge* v. *Reid*, 73 N. C., 440. No such contemplation could have been in the minds of these parties. The measure is the actual damage, not the cost of rebuilding, nor the original cost of building; but taking into consideration these things, and the value of the property by reason of its production, the actual damage is to be estimated. In this view the testimony was entirely competent. *Willis* v. *Branch*, 94 N. C , 142. There were several instructions asked upon the first issue: "Was the plaintiff the owner of the dam and fish trap at the time of the injury alleged in plaintiff's complaint?" And to the second issue, concerning plaintiff's possession, it is unnecessary for us to examine closely into plaintiff's title. His possession was undisputed, and it is certain that an action will lie for trespass and injury to the possession. *Horton* v. *Hensley*, 1 Ired., 163; *Smith* v. *Ingram*, 7 Ired., 175;

*Aycock* v. *Railroad*, 89 N. C., 321. And his Honor charged the jury, substantially, that the plaintiff could only recover according to his interest: " Of course plaintiff's right to recover, in any event, depends upon his title, or upon his possession. If he have neither, he could not recover ; if he have either, he can, if the defendant was guilty of doing him a wrong by reason of his wrongful conduct. The measure of damage would depend on the right the plaintiff had in the fish trap and dam. This damage should be for the injury to his property in the dam and trap, and would be greater for the destruction of property to which he had title in fee simple, than to a mere property in possession." As we have seen, if the defendant had desired more specific instructions on this point, he should have asked for them. As a general proposition, the Court was correct.

It was contended that the damage, if done at all, was by an independent contractor, and, therefore, the defendant is not liable. It is sufficient to say that we do not think there was evidence to that effect. The defendant is a corporation, and must of necessity act through its agents and managers, and there was nothing to show that the person moving the logs was other than defendant's agent.

Not to protract the discussion, many of the prayers for instruction and exceptions being based upon the theory that the French Broad river was a floatable stream, and the jury having found to the contrary, will not need to be examined.

We see no objection to counsel's using the stenographic notes, in rehearsing parts of the testimony to the jury, when they are read as aids to his memory, and are according to his recollection. They derive no additional weight from being such notes, but are simply counsel's statements, not under oath, but in the course of the argument, as to his understanding of the testimony.

We have given careful consideration to all the exceptions of defendant, and the very able argument of counsel, and to

the authorities cited by them, and we are of the opinion that the case was very carefully and conscientiously tried below, and there is no error.                                    No Error.