# LUM AH LEE, LUM YUEN SING, LUM AH SAM, LUM YET, LUM KUM, LUM LOY, TONG KIT, WAI SUNG, MAN LUM and LUM SING, DOING BUSINESS AS COPARTNERS UNDER THE FIRM NAME OF SEE YICK WAI COMPANY *v.* AH SOONG, TING SING, WONG GONG AND FONG YUEK.

APPEAL FROM ROBINSON, CIRCUIT JUDGE, FIRST CIRCUIT.

ARGUED OCTOBER 8, 1904.        DECIDED OCTOBER 18, 1904.

FREAR, C.J., HARTWELL AND HATCH, JJ.

WATER—*illegal diversion.*

Damage to taro crop caused by defendants' illegal· diversion of water held properly assessed to defendants, although a drouth was the cause of partial failure of crop, allowance having been made in the award for the proportion of loss caused by the drouth upon other taro crops in the vicinity.

DAMAGES—*certainty as to cause and amount of.*

An award by the trial judge of damages to crops from illegal diversion of water not set aside by reason of evidence that either plaintiffs or third parties had tightened upper dams, thereby decreasing the flow of water in the ditch by which plaintiffs' land was irrigated, there being no evidence of any appreciable injury resulting thereby to plaintiffs' crop, or that the dams were illegally tightened.

BURDEN OF PROOF.

The burden in such case is on the defendants to show an appreciable effect upon the damage caused which resulted from the acts of the plaintiffs or of third parties, and also that those acts, which consisted in tightening the upper dams, were illegal.

OPINION OF THE COURT BY HARTWELL, J.

This is an appeal from a decree made by the Third Judge of the First Circuit Court at chambers, perpetually enjoining the defendants from obstructing, interfering with or decreasing in volume the water flowing over a certain dam in Manoa stream called the Paaluhi dam, or in any manner obstructing, interfering with or decreasing in volume the water used in supplying the lands of the complainants on the Ewa side of said stream flowing in the ditch from the dam known as the Bishop dam, and described in the plaintiffs' bill of complaint, and also awarding to the plaintiffs damages in the sum of $1,700., "resulting to and sustained by the said complainants by reason of the unlawful acts of said respondents in trespassing upon said land, and in obstructing and interfering with and decreasing in volume the water flowing over said Paaluhi dam through said ditch, together with costs in the further sum of $55.50; which said several sums are hereby assessed against the said Ah Soong, Ting Sing, Wong Gong and Fong Yuek, jointly and each of them severally."

At the first hearing on the bill before Silliman, J., at chambers, a decree was made dismissing the bill. On appeal therefrom this court reversed that decree and remanded the case to the Circuit Judge of the First Judicial Circuit, to ascertain the amount of damage suffered by the complainants in consequence of the respondents' wrongful acts, and to enter a decree in accordance with his findings thereon and in conformity with the views expressed by this court in its decision. 13 Haw. 378.

It is contended by the defendants "that the testimony for the plaintiffs does not meet the rule requiring a reasonable certainty in the proof of damages;" that the evidence shows three

distinct causes of loss in addition to the acts of the defendants, namely: "(1) the act of God; (2) the acts of the plaintiffs; and (3) the acts of third parties;" that the extent of the loss from the natural cause of drouth was unsupported by any evidence, although fixed by the circuit judge at one-fourth of the total loss; that the judge made no allowance for loss from the plaintiffs' own acts, and that the extent of that loss was incapable of ascertainment; and that the same was true of the damage caused by the acts of third parties. The following citations were made in support of this contention: *Wakeman v. Mfg. Co.,* 101 N. Y. 205; *Selden v. Cashman,* 20 Cal. 57.

The New York case was an action for damages for breach of an agreement by which the defendants were to furnish sewing machines for sale in Mexico, giving the plaintiffs the sole agency for the sale. The plaintiffs had sold fifty machines and sent the order to the defendants for them, which order was filled, but the defendants refused to fill a second order of the plaintiffs for fifty machines. The plaintiffs showed a profit which they could have made of $4.00 on a machine, and the damages were limited by the trial judge to the loss of profits on the machines which they ordered. The plaintiffs claimed damages for a total breach of the agreement. The appellate court, while saying that damages which were merely speculative and imaginary could not be recovered, held that in this case the defendants had a right to establish agencies for the sale of their machines, which agencies could not be broken up at the will of the defendants without default of the plaintiffs; that the agreement had value to the plaintiffs, of which they had been deprived by the defendants, and that while that value was uncertain and difficult to estimate, the plaintiffs "should not have been deprived of the damages which they made to appear because they could not make clear the full amount of their damages. All the facts should have been submitted to the jury with proper instructions, and their verdict, not based upon mere speculation and possibilities but, upon the facts and circumstances proved, would have approached as near the proper measure of justice as the nature

of the case and the infirmity which attaches to the administration of the law will admit. In 1 Sutherland on Damages, 113, it is said: 'If there is no more certain method of arriving at the amount, the injured party is entitled to submit to the jury the particular facts which have transpired, and to show the whole situation which is the foundation of the claim and expectation of profits so far as any detail offered has a legal tendency to support such claim.' "

*Selden v. Cashman,* above cited, was an action for wrongful levy, in which the plaintiff claimed that during the levy his store was closed and his business stopped. He claimed damages for loss done to his business and to his credit, and for the diminution of profits of his trade during the levy. The court held that damages for loss of profits which the plaintiff might have made were too remote and contingent to be allowed, and that "the right of recovery is necessarily limited to such damages as are susceptible of computation." The facts in that case have no parallel in those of the present case.

The extract above cited, however, in the New York case from Sutherland states correctly the rule of law, which entitles an injured party to submit to the jury "the particular facts which have transpired," etc. This view is illustrated in *Merritt v. Brinkerhoff,* 17 Johnson 306, which was an action on the case brought by several owners of mill seats on a stream against the owner of a mill above for damage resulting to the plaintiffs from the defendant's stopping the natural flow of the stream, shutting his gate and detaining the water for an unreasonable time, or letting it out in such unusual quantities as to prevent the plaintiffs from using it. During the time in which the injury was alleged to have been caused, it was shown that there was a very severe drouth, but it was testified that there was enough water to turn the mills if the defendant had not stopped the water in his dam. There was, however, considerable diversity of opinion among the witnesses on this subject. The judge charged the jury that the question whether the injury resulted from the defendant's acts or by reason of the drouth was a question

for them to decide. This instruction was sustained by the appellate court.

The further contention of the defendants is that the amount of the damages awarded by the Circuit Judge was based on no evidence on which the net value of the last crop was legally determinable.

In considering this two-fold defense, that neither the reasonable cause of the damage, nor its extent, was legally shown, we have carefully examined the record of testimony, and are of the opinion that there was legal evidence on which the award was based. This court having in its former decision held that the case showed that the defendants had infringed upon the plaintiffs' legal rights, and that the plaintiffs' taro crops had thereby become diminished in value, the credibility of the testimony concerning the extent of the loss, so far as it legally tended to show such loss, was for the judge to whom it was presented to pass upon. The evidence of the extent of the loss caused by the drouth upon other taro crops in the immediate vicinity was competent to show the extent to which the plaintiffs' crops suffered from the same cause, and the finding of the judge that one-fourth of the loss was so caused was supported by the testimony.

As to the defendants' claim that the plaintiffs' acts in tightening the dams above had caused the loss, the judge in his decision says: "There was some testimony tending to show that the complainants were themselves responsible for the lack of water in Manoa stream, below Paaluhi dam, at least to some extent by reason of their own acts in tightening dams in said stream above said dam supplying an auwai through which other lands owned or leased by complainants were watered, but I am satisfied that such acts of complainants resulted in merely an inconsequential loss of water, so inconsequential in fact as not to contribute in a material degree to the damages sustained by them upon the lands in question in this suit."

We see no reason for reversing this finding. There is no evidence to show the extent of loss thereby occasioned, which defendants' attorneys in their brief say was "incapable of ascer-

tainment, and only renders more uncertain the loss chargeable to defendants." If there was no appreciable damage so caused it was properly disregarded; if appreciable, it could have been estimated. The plaintiffs ought not to be deprived of their right to recover damages for their losses if it were true that some unascertainable part of their loss was caused by their own act. Aside from the improbability that they would have lessened the water supply for their lower lands, it is not clear from the evidence that they did so. Moreover, the burden was on the defendants to show what if any loss resulted from extraneous causes.

The defendants' claim that third parties contributed to the plaintiffs' loss by withdrawing water which otherwise would have gone to the plaintiffs' land was a matter to be determined on the evidence, the burden still being on the defendants to show the same with reasonable approximation. There is no evidence that those who tightened the dams above the Paaluhi dam acted illegally or without right. The judge's finding is not to be set aside on this ground.

The defendants further say, citing from their brief: "If damages are allowable in this case, the measure would be the net value of the taro destroyed in consequence of the illegal acts of the defendants and as the proximate result thereof;" that "the testimony shows that the drouth began in November, 1899, and caused the taro to dry up and rot. But it was not until March, 1900, that plaintiffs found fault with defendants for tightening the Paaluhi dam, and about a week after that, Mr. Peterson went to Manoa and caused the dam to be opened, and thereafter it remained so without interference on the part of the defendants. (Testimony, Ah Soong, pp. 31, 32.) It appears then that the real damage was done before the dam was tightened;" and also, "the testimony of Lum Ah Lee, the principal witness for plaintiffs, as to the area, age and value of the taro said to have been destroyed is in hopeless confusion. He admitted that he did not know the cost of planting, cultivating, and reaping his

taro, (p. 74,) yet, without this information, it is impossible to arrive at plaintiffs' loss. The testimony of W. L. Wilcox on the subject has no application whatever to the particular taro in question, and is not material in this case. \* \* \* The court below in arriving at a decision applied the theoretical figures given by Mr. Wilcox to the admittedly inaccurate and conflicting statements of the Chinese witnesses, making no allowance for rent charges, taking no notice of the fact that the plaintiffs as well as third parties contributed to the injury, approximated the loss caused by nature and finally arrived at an estimated assessment against the defendants that is without foundation in fact and without evidence on which to rest."

We are unable to sustain the foregoing contention. The fact was immaterial that no fault was found by the plaintiffs with the defendants until March, 1900. The evidence of Mr. Wilcox was that of an expert who knew the market value and cost of producing taro in that vicinity. It was not requisite that he should know the actual cost of the taro in question. As to omitting a charge for rental in computing the plaintiffs' damages, we do not think that the loss from failure of the crop was required to be lessened by adding the rental of the land to the cost of production. If the plaintiffs had owned the land, interest on its value would not have been an item to add to the cost of the crop; but failure to make a charge for rental in computing the plaintiffs' damages, if such charge were proper, might reasonably be said to have been offset by the deduction for wages of laborers when, in fact, plaintiffs performed the work themselves, and did not make any outlay for labor.

"In actions for damages the requirement that the damages must not be uncertain is satisfied by a reasonable certainty in this respect. It is sufficient if there be such certainty as satisfies the mind of a prudent and impartial person. The law, it has been said, never insists upon a higher degree of certainty than the nature of a case admits." 8 A. & E. Ency. of Law, 610.

The damages awarded do not appear to be excessive, and are

based upon competent evidence. The decree appealed from is affirmed.

*C. F. Peterson* and *Smith & Lewis* for plaintiffs.

*Robertson & Wilder* for defendants.