## GEORGE MALCOLM CONEY *v.* THE LIHUE PLANTATION COMPANY, LIMITED.

### No. 2781.

ARGUED AUGUST 31, 1951.              DECIDED SEPTEMBER 19, 1951.

LE BARON AND TOWSE, JJ., AND CIRCUIT JUDGE BUCK IN PLACE OF KEMP, C. J., RETIRED.

This is an action in trespass for damages in the sum of $5,790.42 as to a continuing injury alleged to have been suffered throughout the year 1947. After trial, the jury returned a verdict in favor of the plaintiff and assessed damages in the sum of $3,711 against the defendant. The defendant thereafter moved for a new trial which was denied. The defendant appeals to this court by way of exceptions.

The defendant's bill of exceptions contains forty-three exceptions. The first forty-one allege errors of trial. The forty-second runs to the verdict. The forty-third is to the order denying motion for a new trial. Within twenty days after the order denying motion for a new trial, the trial judge granted further time in which to present a bill of exceptions and the instant bill was presented and allowed within that extended time. But no prior extension of time had been allowed within twenty days after verdict and the only order extending time was in fact entered sixty-four days after verdict. On those facts the plaintiff contends that this court has no jurisdiction to consider the first forty-two exceptions of the bill in that they were not properly incorporated into the bill within the time required by statute. (R. L. H. 1945, § 9531.) Nor does the defendant contend otherwise. It is well settled that an extension of time to be valid as to exceptions pertaining to alleged errors of trial and to the verdict must be granted "within twenty days after verdict" or within any prior extension of time permitted by statute. (*Kapiolani Est.* v. *Peck & Co.,* 14 Haw. 580; *Harrison* v. *Magoon,* 16 Haw. 170; *Kauhane* v. *Laa,* 19 Haw. 526; *Territory* v. *Manlapit,* 28 Haw. 455; *Soon* v. *City and County,* 32 Haw. 19.) Nor can a bill of exceptions be amended by incorporating therein entirely new exceptions after the time prescribed by statute for incorporating the exceptions into the bill has elapsed. (*Kapiolani Estate* v. *Thurston,* 16 Haw. 147.) The first

forty-two exceptions of the bill were obviously incorporated therein after elapse of such prescribed time. Therefore, they were not properly incorporated and this court has no jurisdiction to consider them. It has jurisdiction, however, to consider alleged errors to which they pertain if specified and relied upon as grounds in the denied motion for a new trial, to which exception number forty-three relates. (See *Harrison* v. *Magoon*, 16 Haw. 332.) That exception is the sole one properly incorporated into the bill and requires appellate consideration.

Exception forty-three presents but one question of law meriting the attention of this court. That question involves the quantum of proof. It is whether or not there is in the record more than a scintilla of substantial evidence to support the verdict (1) as to the finding by the jury of damage and (2) as to its assessment of the amount of damages. Consideration of this twofold question requires statement of the undisputed facts and circumstances of the case.

The plaintiff since July 25, 1924, has been the lessee of *konohiki* fishing rights within certain private sea fisheries covering a large area or the major part of Nawiliwili harbor, island of Kauai. At this juncture it is pertinent to note that those rights are not only subjects of lease, but are in character legal rights of ancient origin, having survived the operation of section 95 as established vested rights under proceedings provided by section 96 of the Hawaiian Organic Act and recognized as such by statute. (R. L. H. 1945, § 1211.) (See *Damon* v. *Tsutsui*, 31 Haw. 678.) By virtue of lease, the plaintiff acquired the status of the konohiki of the fisheries, considered in law to be his private property (R. L. H. 1945, § 1204), and had statutory power under that status to set apart by public notice "one given species or variety of fish natural to his fishery" with exclusive right to catch such species which if caught by

others within bounds of the fisheries "shall be the property of the konohiki." (R. L. H. 1945, §§ 1206, 1207.) Consistently with the exercises of that power, the plaintiff since 1924 has exercised the konohiki fishing rights, leased to him, by engaging in a commercial enterprise to catch a certain species or variety of fish, natural to the fisheries and known as "akule," and has openly done so to the exclusion of the public generally. He has kept records of his yearly catches of akule beginning with the year 1933. In that enterprise he employed fishermen, who used boats and gill nets. One of the fishermen acted as a spotter or "kilo." His duty was to be on the lookout for akule within the fisheries during the hours of daylight. From the vantage point of a mountain top facing the harbor, he signalled to the other fishermen below when he saw a school of akule within the fisheries and then either directed them to the location of such observed school, or joined them in encircling it with gill nets. The operation of catching akule thus required teamwork on the part of the fishermen. Some catches were made when a school of akule surfaced. But most were made when it did not and was detected only when the natural clearness of the fishery waters enabled the spotter from the mountain top to see the bottom of the harbor, and the fishermen in the boats to see below the surface. Such was the general prevailing character of the fishery waters controlling the manner of operation before the advent of the defendant.

The defendant since 1942 and particularly during 1947, the year involved in the action, released waste water from its Lihue sugar mill into not only the Nawiliwili stream flowing directly into the harbor, but the ocean at points about a mile from the fisheries.

The gist of the plaintiff's case against the defendant as to injury or damage suffered during the year of 1947 is that the water so released entered into the fishery waters, pol-

luting and discoloring them, and rendering them opaque. The defendant admits that there is substantial evidence more than a scintilla to that effect. But it argues that such evidence does not tend to prove injury or to support the verdict as to a finding of damage. Such an argument is untenable upon the facts and circumstances of the case. To cause the fishing waters to become opaque during the year of 1947 would patently jeopardize for that period the efficiency of the plaintiff's fishing enterprise, the success thereof depending as it does upon the natural clearness of those waters. It is not a matter of the amount of akule within the fisheries at any given time but detection of their presence. In order to operate profitably, akule must first be seen, otherwise the plaintiff's enterprise would be a pure gamble with great odds against making a catch in opaque waters. Obviously, any act of pollution destroying the natural clearness of the fisheries for such a long period in such a large area would be a tortious act injuriously affecting and impairing the plaintiff's fishing rights. That act would be violative of those rights rather than destructive of fish. The resultant injury in its nature would be an infringement on private rights of fishery and would constitute a damage different from injuries suffered by the public generally. It follows therefrom that the substantial evidence in question is probative of an infraction of legal rights and by more than a scintilla establishes with reasonable certainty an injury to the plaintiff as the natural consequence of the defendant's wrongful act. Such evidence therefore proves an injury and supports the verdict as to a finding of damage in contradistinction to the jury's assessment of the amount of damages.

Material to the question of the actual amount of damages suffered during the year 1947, the evidence is undisputed that during the years 1933 to 1942, before the defendant commenced to release waste water and before

that water entered the fishery waters, the yearly catch of akule by the plaintiff on an average was substantially higher than it was for the year 1947 with a corresponding substantial difference in the amount of profits realized for the latter year from the average amount for the prior years. There is substantial evidence more than a mere scintilla to prove that the sole variant as the proximate cause of such difference in catch and profits from the average was the absence of waste water during the prior years and its presence during the latter year directly resulting from the tortious act of the defendant in releasing such water. Supplementing that evidence of sole variant is evidence tending to prove that the year of 1947 was more free from heavy rains interfering with fishing operations than were the years of 1933 to 1942, the reasonable inference being that had the fishery waters not been otherwise polluted by the waste water during the later year the catch of akule and profits realized for that year would have been greater in amount than the average yearly catch and profits for the prior years. Divergent from the evidence of sole variant is evidence of factors, other than the factor of waste water being absent or present, which operated to cause the substantial difference in catch and profits from the average. Illustrative of that conflict is evidence of varying conditions throughout the years involved and the inferences to be drawn therefrom as well as from the fact of the highly fluctuating amounts of catch made in the years of 1933 to 1942 and from evidence of a greater catch in the year 1945, when the variant of waste water was present, than any yearly catch in six of the prior nine years, when that variant was not present. Underscoring such conflicting evidence of contrary import are the facts that the smallest yearly catch for, and profits realized in, any one year of 1933 to 1942 were substantially greater than the catch for, and the profits in, the year 1947, and that neither the

amount of akule entering the fisheries in any particular year nor their habits are known, other than that they sometimes surface, but more often do not. The defendant contends in effect that such conflict in the evidence of sole variant so impairs, if not destroys, its probative force that the difference in catch and profits from the average is rendered valueless as an aid in estimating damages, and demonstrates that the jury acted on mere speculation and conjecture, in that it had no reliable data or elements of certainty upon which to assess accurately the actual damages suffered. But the jury presumably resolved that conflict favorably to the plaintiff's case in harmony with the full probative force of the substantial evidence of sole variant and in estimating the amount of actual damages presumably considered waste water to be the controlling factor causing the difference in catch and profits from the average. This is indicated by the result of the verdict and the jury's assessment of damages which concededly approximates the substantial difference in amount of profits realized for the year 1947 from the average amount for the years 1933 to 1942 as established by the undisputed evidence. Nevertheless as argued by the defendant there is to be found in the case no measure of damages with any degree of accuracy. But this is due to the nature and circumstances of the case itself which admits of no rule by which a just and adequate compensation can be readily and accurately measured. Nor is that state of affairs the fault of the plaintiff. The unique character of the plaintiff's fisheries differing as it does from that of other fisheries in conditions and circumstances makes it extremely doubtful that evidence concerning those other fisheries would be competent or admissible. Has then the plaintiff no redress for the defendant's wrong merely because the nature and circumstances of the case prevent him from establishing with accuracy the precise amount of damages

actually suffered? Justice itself demands that such a question be answered in the negative where, as here, it is apparent that the plaintiff was substantially injured as to his legal rights at the instance of the defendant.

This court early in its history laid down, and has not since departed from, the rule that "Damages which cannot be accurately measured should not for that reason be denied, but the amount should be left to the jury." (*Ah Quai* v. *Puuki*, 11 Haw. 158.) It cites "*Gilbert* v. *Kennedy*, 22 Mich. 117; 128" as the sole case of authority for that rule. (*Ah Quai* v. *Puuki, supra,* at page 161.) Significantly it gives page *128* as a part of that citation on which begins an illuminating exposition by the supreme court of Michigan on the rule's underlying principles and thus by implication rests the rule on those principles. The rule so rested being applicable to this case, this court now directly adopts the language of the supreme court of Michigan expressing such principles as a part of this opinion. That language reads:

"The damages to be awarded should be such as *adequately* to compensate the actual loss or injury sustained. This is an obvious principle of justice from which we see no reason to depart. But in the application of the principle, difficulties often arise in ascertaining, with anything like accuracy, the actual damages which the plaintiff has suffered from the injury; or what sum will produce adequate compensation.

"Some cases are such in their nature and circumstances as to furnish an obvious rule by which a just and adequate compensation can be readily and accurately measured; and whenever, and so far as this is the case, such rule should be applied in actions of tort as well as in those upon contracts, as we held in *Allison* v. *Chandler, 11 Mich., 542,* and in *Warren* v. *Cole, 15 Mich., 274.*

"But such is the almost infinite variety of circumstances under which torts may be committed, that cases will often occur in which, *first,* no reliable data, no element of certainty can be found by which to measure with accuracy the actual amount of the damages, though it is evident to the court and jury that large damages have resulted from the injury; and, *second,* cases in which there will be elements of certainty as to a part only of such damages, leaving it certain that the actual damages must be largely beyond what can be thus accurately measured. Now, in the first class of cases, are the jury to give merely nominal, or what is the same thing, *no* damages, and is the injured party to obtain no redress, because the case happens to be one which does not furnish a rule for their accurate measurement? And, in the second class of cases, is he only to recover so much as can be measured with certainty, though it may be *equally certain* that this does not cover the tithe of the damages really sustained? This might be well enough if the want of certainty inherent in the nature of the case were properly attributable to the fault of the plaintiff. But *he* did not make the case; this was made against his will by the defendant, who chose his own time, place and manner of committing the wrong, and the plaintiff is compelled to grapple with the case thus made for him; and, therefore, such a rule, as one of universal application, can only become just when trespassers become so considerate of the rights of others as to commit their trespasses only in cases and under circumstances where the damages can be calculated by a fixed and certain rule. To deny the injured party the right to recover any actual damages in such cases, because they are of a nature which cannot be thus certainly measured, would be to enable parties to profit by, and speculate upon, their own wrongs, encourage violence and invite depredation. Such is not,

and cannot be the law, though cases may be found where courts have laid down artificial and arbitrary rules which have produced such a result.

"There can be no rule of law founded upon any just or intelligible principle, which, in actions of trespass at least, requires any higher degree of certainty in the evidence upon which the damages are to be estimated, than in reference to any other branch of the cause. Juries, in such cases, have as much right, and it is as clearly their duty to draw reasonable and probable inferences from the facts and circumstances in evidence, in reference to the amount of damages, as in reference to any other subject of inquiry in the case and in those cases of trespass, or those features of a particular case, where, from the nature of the case, adequate damages cannot be measured with certainty by a fixed rule, all the facts and circumstances tending to show such damages as are claimed in the declaration, or their probable amount, should be submitted to the jury to enable them to form, under proper instructions from the court, such reasonable and probable estimate, as in the exercise of good sense and sound judgment they shall think will produce adequate compensation. There is no sound reason in such a case, as there may be, to some extent, in actions upon contract, for throwing *any part* of the loss upon the injured party, which the jury believe from the evidence he has sustained, though the precise amount cannot be ascertained by a fixed rule, but must be matter of opinion and probable estimate. And the adoption of any arbitrary rule in such a case, which will relieve the wrong-doer from any part of the damages, and throw the loss upon the injured party, would be little less than legalized robbery.

"Whatever of uncertainty there may be in this mode of estimating damages, is an uncertainty caused by the defendant's own wrongful act; and justice and sound public

policy alike require that he should bear the risk of the uncertainty thus produced; and this not only when the trespass is willful and wanton, without a claim of right, but whenever the property, though claimed by him, is in the possession of another, and he, taking the law into his own hands, makes himself judge in his own cause, and, knowing his right to be disputed, seizes upon the property without a judicial trial of his rights.

"These principles were laid down with their proper qualification, and the difference between this class of cases and those arising upon contract fully explained by this court in *Allison* v. *Chandler,* above cited, the soundness of which we have no reasons to doubt."

The principles, so stated, are consistent with the general proposition that the law never insists upon a higher degree of certainty as to the amount of damages than the nature of the case admits, and that where, as here, the fact of damage is established, a more liberal rule is allowed in determining the amount. (See *Lum Ah Lee* v. *Ah Soong,* 16 Haw. 163, 169; *Larson* v. *Union Investment & Loan Co.,* 168 Wash. 5, 10 P. [2d] 557.) Those principles were followed by the trial judge when he submitted the question of the amount of damages to the jury under proper instructions and upheld when he denied the motion for a new trial. He thus acted in conformity with the well-settled rule which such principles support.

The rule in this jurisdiction as laid down by this court in *Ah Quai* v. *Puuki, supra,* resting as it does upon the principles expressed in *Gilbert* v. *Kennedy, supra,* requires no further persuasive authorities from other jurisdictions. There is, however, a great wealth of such authorities under comparable applications of the rule. (See *Steitz* v. *Gifford,* 280 N. Y. 15, 19 N. E. [2d] 661, 663, 664; *Pacific Steam Whaling Co.* v. *Alaska Packers' Ass'n.,* 138 Cal. 632, 72 Pac. 161; *Post* v. *Munn,* 4 N. J. L. 67, 7 Am. Dec. 570; *Bales* v.

*City of Tacoma,* 172 Wash. 494, 20 P. [2d] 860; *Maddox* v. *International Paper Co.,* 47 F. Supp. 829; *Gwaltney* v. *Scottish Carolina Timber & Land Company* [N. C.], 20 S. E. 465; *The Seven Brothers,* 170 Fed. 126; *Allison* v. *Chandler,* 11 Mich. 542, which is cited with approval in *Gilbert* v. *Kennedy, supra.*) Nevertheless, the defendant relies upon the cases of *Anderson* v. *Columbia Contract Co.,* 94 Ore. 171, 184 Pac. 240; *Lamond* v. *Seacoast Canning Co.,* 108 Me. 155, 79 Atl. 385; *Wright* v. *Mulvaney,* 78 Wis. 89, 46 N. W. 1045; *Williams* v. *Pelican Natural Gas Co.,* 187 La. 462, 175 So. 28. But those cases do not operate to controvert either the rule or its application to this case and are distinguishable upon their facts and circumstances. No useful purpose would be served by further considering them. Suffice it to say that there is in the record substantial evidence more than a scintilla, not only to prove injury or damage, but to establish a reasonably certain amount of actual damages traceable with reasonable certainty directly to the tortious acts of the defendant to the exclusion of other causes, which evidence in the opinion of this court required that the question of the amount of damage be submitted to the jury consonant to the rule and supports the verdict in its entirety as a matter of law. The question of law as presented by exception forty-three is therefore answered in the affirmative.

Exception overruled.

*W. L. Fleming* (*Smith, Wild, Beebe & Cades* with him on the briefs) for defendant-appellant.

*W. C. Ingman* (also on the brief) for plaintiff-appellee.