# APPENDIX

Of Cases found too late for insertion in their proper order.

---

## *In re* APUNA.

### HABEAS CORPUS.  BEFORE HARTWELL, J.

### NOVEMBER, 1869.

Rights of persons in this Kingdom, under Writs of *Habeas Corpus,* are as fully secured by Constitutional and Statutory provisions as if the enactments of English law in this respect were spread on our statute books: and in construing our law the Court must be guided by those enactments and the decisions of American and English Courts.

Apuna was sentenced by a Circuit Court to pay $300 fine, and costs, for selling opium without a license: he was imprisoned at hard labor by the Marshal: Held, as the sentence and the mittimus failed to express that the defendant should be imprisoned at hard labor in default of paying his fine, the imprisonment was illegal, and he must be discharged.

Costs can be imposed by the Court as part of a sentence.

### DECISION OF HARTWELL, J.

The Marshal's return to the writ was as follows:

"In obedience to within writ, I do bring into this Honorable Court the body of the within named Apuna.  Said Apuna was committed to my custody on the 12th day of August, A.D. 1869, by virtue of a mittimus to me directed from the Fourth Judicial

Circuit of the Hawaiian Islands, in words and figures as follows, to wit:

'Circuit Court of the Hawaiian Islands, Nawiliwili, August Term, A.D. 1869. To W. C. Parke, Esq., Marshal of the Hawaiian Islands, Greeting: Whereas Apuna (P.). has been convicted at the present term of this Court of the crime of selling opium without a license, and has this day been sentenced by the said Court to pay a fine of three hundred ($300) dollars, with costs of Court, seventy-seven 80-100 ($77.80) dollars:

'Therefore, you are hereby commanded to receive the said Apuna into your custody, and see the above sentence duly executed.

'Witness the Honorable H. A. WIDEMANN, Second Associate Justice of the Supreme Court, at Nawiliwili, this 12th day of August, A.D. 1869.

'[Seal.]          (Signed)     DUNCAN MCBRYDE, Clerk.'

"And I do hereby return this writ complied with this 8th day of November, A.D. 1869.          W. C. PARKE, Marshal."

"And I do hereby make further return that the said Apuna now is and has been held to hard labor since the commitment to my custody.          W. C. PARKE, Marshal."

The petitioner's traverse to the Marshal's return denies that the Court had any authority so to sentence, or that there was any crime by the prisoner committed to authorize or justify the sentence imposed, or the issuing of such mittimus, the same not being justified by the law under which he was convicted, viz., selling opium without license; denies that the said mittimus is the process of the Circuit Court of the Fourth Judicial District, as it does not bear teste of said Court; denies that the Marshal, under said process, has authority to detain and imprison said Apuna at hard labor, or in any other manner, as he is commanded to execute the sentence, and imprisonment, or imprisonment at hard labor, forms no part of the sentence nor of the command in said mittimus; denies that the Marshal has, under said writ, or by authority of any law of this Kingdom, power to execute a sentence in any manner for fine with costs; denies

that the Marshal has authority to execute a sentence for fine, or fine and costs, at hard labor, unless such sentence is so pronounced by the Court and recorded in the mittimus.

## BY THE COURT.

The Constitution provides that "the privilege of the writ of *habeas corpus* belongs to all men, and shall not be suspended, unless by the King, when, in cases of rebellion or invasion, the public safety may require it;" that "no person shall be subject to punishment for any offense, except on due and legal conviction thereof in a court having jurisdiction of the case;" that "no person shall be deprived of life, liberty or property without due process of law;" that "every person has the right to be secure from all unreasonable searches and seizures of his person," etc.; that "each member of society has a right to be protected by it in the enjoyment of his life, liberty and property according to law." Articles 5, 6, 9, 12 and 14.

The statute gives Justices of this Court, in Chambers, jurisdiction "to issue writs of *habeas corpus*, for inquiring into the cause of any alleged unlawful imprisonment or restraint." Section 855 Civil Code.

What is this writ of *habeas corpus?* In many of the United States there are statutes defining its nature and force; but they are all essentially alike, and are all in substance the same with the English Statute of 31 Car. II.

It is unnecessary to refer to the different writs of *habeas corpus ad testificandum, ad satisfaciendum,* etc., which are so named to denote the purpose for which they were issued. The writ always intended, if not otherwise described, is the writ *ad subjiciendum et recipiendum,* which was designed to release persons from illegal confinement. The writ was known in English law long anterior to Magna Charta, which secured the acknowledgment of common rights, as follows:

39. *"Nullus liber homo capiatur, vel imprisonetur aut dissaisiatur aut utlagetur, aut aliquo modo destruatur; nec super eum ibimus, nec super eum mittemus, nisi per legale judicium parium suorum, vel per legem terrae."*

40. *"Nulli vendemus, nulli negabimus, aut differemus, rectum aut justitiam."*

39. "No freeman shall be taken or imprisoned, or dispossessed, or outlawed, or banished, or in any manner destroyed; nor will we convict or sentence him, except by lawful judgment of his peers, or the law of the land."

40. "To none will we sell, to none will we deny or postpone, right or justice."

Lord Chatham, in speaking of these words in the House of Peers, used this memorable language: "They (your ancestors) did not say these are the rights of the great barons, or these are the rights of the great prelates. No, my lords: they said, in the simple Latin of the times, *Nullus liber homo,* and provided as carefully for the meanest subject as for the greatest. These are uncouth words, and sound but poorly in the ears of scholars; neither are they addressed to criticism of scholars, but to the hearts of freemen. These three words—*Nullus liber homo*—have a meaning which interests us all; they deserve to be remembered, they deserve to be inculcated in our minds—they are worth all the Classics."

After the Charter of Runnymede, the Petition of Right and the Bill of Rights were secured, and the three together form "The Bible of the English Constitution." In 1679 the *Habeas Corpus* Act of 31 Car. II. was passed. The Act of 56 George III. extended the power of the writ, and enabled the Judge before whom the writ is returned to inquire into the truth of the facts alleged therein.

It is common to speak of the *privileges* thus secured; but no sound jurist or thinker ever admitted that these privileges were anything but common rights under the law of England. The rights of persons in this Kingdom under writs of *habeas corpus* are, in my opinion, as fully secured by Constitutional and Statutory provisions as if the famous English guaranties and enactments, with merely verbal alterations, were spread upon our statute books. The writ of *habeas corpus* enjoyed here is the same in substance with the original writ as secured and vivified

by the English Acts, Bills and Charters. Anything less than this would make the provisions therefor in our Constitution and Statutes hollow and meaningless, and be contrary to sound rules of legal construction. I must, therefore, be guided by these lights, and by the decisions of English and American Courts, concerning the law of *habeas corpus;* and I think the practice of this Court has never been opposed to this view.

By the Act of 31 Car. II. persons committed or detained for any crime but treason or felony (if they are not persons convict or in execution by legal process) have a right to be brought before the Court on *habeas corpus,* and the Court within two days must discharge the prisoner, "unless it shall appear that he is detained upon a legal process, order or warrant out of some Court that hath jurisdiction." The true rule to be gathered from the authorities is, that the function of this writ does not supersede the functions of Writs of Error and Certiorari, Bills of Exceptions and Appeals. The alleged errors of a trial should be reconsidered only by the Appellate Court authorized by law to review them. No power is given, and perhaps none exists, to review the decision of a Judge discharging a prisoner on *habeas corpus.* Hence the necessity of exercising jurisdiction in such cases with discretion, and according to established principles. The Court will rarely use the writ of *habeas corpus* to effect a reversal of judgment rendered by a Court of competent jurisdiction, the mittimus showing a *prima facie* legal conviction. The officer's return, or the record brought up on *certiorari,* ought to show these legal requirements. If the process is merely voidable, and not actually void, it is regarded as good authority for the confinement of the prisoner until the judgment shall be reversed by the Appellate Court.

The petitioner's plea to the officer's return neither in legal intendment traverses, nor confesses and avoids, the facts alleged; but it is a demurrer to the legality of the imprisonment. It is claimed that the imprisonment, either at hard labor or otherwise, is illegal:

1. Because the mittimus is not duly authenticated as the process of the Court.

2. Because the law does not authorize the imposing of costs as part of the sentence.

3. Because the mittimus does not order the Marshal to imprison at hard labor or otherwise.

4. Because the law gives the Marshal no discretion or authority to imprison at hard labor or otherwise.

The first objection has no force, and was in fact not insisted upon. No statute requires the process to bear teste of the presiding Justice; the seal of the Court, with the official signature of the Clerk and the signature of the Justice of the Court who in fact presided, are sufficient.

The statute penalty for this offense is a fine not exceeding five hundred dollars, or imprisonment at hard labor for a term not exceeding six months. A "fine of $300, with $77 costs of Court," is a sentence within this statute. If the mittimus should command the Marshal to imprison until the payment of an extreme fine of $500 and $77 costs, the statute, perhaps, might sanction such order. The provision for the discharge of a poor convict at the end of one year, if he is unable to pay the "fine, or fine and costs only, or either of them," for, which he "shall have been imprisoned," would seem to imply the power to adjudge payment of costs. (Sec. 2, Ch. LI., Comp. Penal Code.) So does Sec. 5, *Ib.*, which makes the officer liable if he allows the escape of any person undergoing "sentence of Court for payment of any sum as a fine, forfeiture or costs." On the other hand, Sections 6 and 7, *Ib.*, provide for execution to issue on the convict's property for costs, and that if they are not paid by him or out of his property, they "shall be paid out of the Treasury of the Kingdom."

I will not, however, volunteer an opinion on facts not before me; if such a case should arise, it would properly be reviewable on error to the Full Court. By Section 2 of the same Chapter of the Penal Code, "when a fine is not paid immediately following the offender's conviction he shall be committed to prison, there to remain at hard labor or otherwise, in the discretion of the Court or magistrate, until such fine is paid, or collected out of

47

the offender's property." It may be inferred from this mittimus that the fine was not paid; but imprisonment at hard labor cannot be inferred. Nothing can be presumed against the liberty of the person. The discretionary power of the Court to commit the offender to prison, "there to remain at hard labor or otherwise," was not exercised in this instance, and it is not a power which can be delegated to another. The power to pronounce the entire sentence, or to try the prisoner, may as well be delegated. The authority of the Marshal to hold this prisoner as he is doing is not under this mittimus. Is it under the general law?

The Civil Code provides: "When any person shall be sentenced to pay a fine, and to be imprisoned until such fine is paid, the time of his imprisonment shall be deemed to discharge his fine at the rate of twenty-five cents a day." (Section 221.) "Every person who shall be fined for a violation of any provision of the revenue laws shall, in case he fail to pay such a fine, be imprisoned at hard labor until such fine be paid or remitted, or until he shall have earned a sum equivalent to such fine." (Section 685.) It is enough to say of these statutes that this case comes under neither of them. This is not a case of violation of revenue laws. A sentence of fine and imprisonment is expressly provided for in the former section, and no power is there given for the Courts to extend a sentence beyond the penalty affixed by law for each particular offense, nor for the Marshal to execute a sentence never pronounced.

By Section 206 of the Civil Code, the Minister of the Interior, with the approval of the King in Cabinet Council, "may prescribe rules and regulations for the government and discipline" of prisoners. It was suggested that the prison rules authorized the Marshal to imprison Apuna at hard labor; but the suggestion was withdrawn on subsequent examination of the rules themselves. In regard to this portion of the argument, in which it was urged upon the Court that judicial knowledge must be taken of the existence and nature of such rules, I feel bound to say that I am aware of Constitutional provisions which make

void any rules going to the extent suggested. The discipline of convicts does not include the power to attach penalties not prescribed by statute and imposed by the Court. It is a right of every accused person to know beforehand what penalty may be imposed by law for the crime charged. It is the right of a person convicted of crime to be informed in open court of the sentence imposed. The statutory power to restrain and govern prisoners has been exercised, however, only within its proper legal limits.

I find no authority, therefore, for the Marshal to execute a sentence of imprisonment at hard labor in this case. Nor have I any power to remand the prisoner, in order that such a sentence may be imposed, if deemed proper.

The petitioner's counsel argued that a sentence of imprisonment could not have been passed which should exceed the limit of six months, or which, by force of other statutes, should work imprisonment exceeding six months. The question is not properly before me now, but it should be carefully considered by magistrates, in like cases, in determining what sentence to impose.

Let an order be made discharging the prisoner.

*R. H. Stanley,* for petitioner.

*S. H. Phillips* (Attorney-General), for the Marshal.

Honolulu, November 17, 1869.