This is a petition for a writ of habeas corpus in a capital case. It is brought on behalf of John Palakiko and James Edward Majors, convicted of murder in the first degree. The petitioner is the sister of Palakiko and she filed the petition on her own affidavit under the circumstances and on the grounds described inApplication of Palakiko and Majors, 39 Haw. 134. Those grounds constitute a collateral attack upon the conviction of Palakiko and Majors in the first circuit court of the Territory and are, briefly, that such conviction is void because it was secured by coerced confessions in deprivation of constitutional rights and because based upon an unconstitutional statute. Late at night before the day set for execution pursuant to death warrants, the petition was presented to a justice of this court. After continuous argument of counsel and amici curiae until early morning, that justice denied the petition for insufficiency upon its face but stayed execution and has referred petition to this court as a whole. (See Application of Palakiko and Majors,supra.) Although of the opinion that the petition was properly so denied and its insufficiency not cured by additional affidavits, this court, due to the gravity of the situation, preferred that Palakiko and Majors themselves be heard to state whatever case they might have rather than conclude the matter on the supplication of another. Accordingly, this court exercised its discretion and issued the writ. The return made it appear that Palakiko and Majors were sentenced by a court having jurisdiction of the crime charged and of their persons and that they are restrained by virtue of such sentence and the death warrants issued by the governor of the Territory as provided by law. To that return Palakiko and Majors *Page 169 
made traverse, which renewed the collateral attack of the petition and brought into issue the coercive character of the confessions and the unconstitutionality of statute within the over-all constitutional question of due process of law. Assuming at the time, but not deciding, that the traverse warranted further habeas corpus proceedings other than discharge of the writ, this court, in order to be fully advised of the true nature of the case of Palakiko and Majors, held a hearing and permitted them through their attorney the greatest possible latitude in which to sustain the burden of establishing that the conviction is void as alleged in their traverse. They failed, however, to sustain that burden after the lengthiest hearing in the history of this court and after exhaustive argument on the law.
The traverse to the return, aside from raising the issue of the statute's unconstitutionality and aside from matters presented by two amendments at the close of petitioner's case on hearing, raises two main issues which are determinative of and into which are merged all issues touching upon alleged violations of constitutional rights. The first main issue so raised is whether the confessions, when made, were voluntary as a matter of fact, and the second whether they were as a matter of law. Those issues, however, were issues at the trial. There they have been litigated by the parties and determined in the affirmative by the trial court and by the jury under proper instructions of law. Moreover, all the evidence pertinent to such issues, out of the great mass of evidence as presently adduced at the instant hearing, was available at the time of trial and is largely cumulative of the evidence on which the issues were determined at the trial. In addition, the supreme court of Hawaii on writ of error reviewed the evidence of trial on assignment alleging error to the admission into evidence of the confessions on the ground that they were not voluntarily made, and sustained the conviction. The United *Page 170 
States Court of Appeals for the Ninth Circuit on appeal reviewed that evidence on the sole issue of due process of law, relative to the securing and use of the confessions, and affirmed the judgment of the supreme court. (See Territory v. Palakiko etal, 38 Haw. 490; Palakiko v. Territory of Hawaii, 188 F. [2d] 54.) The determination itself of those issues on trial was thus not only reviewable but actually twice reviewed to final appellate decision. At every stage of the trial and appellate proceedings Palakiko and Majors had the assistance of three able and competent attorneys, as will be more fully developed in the course of this opinion.
It is the settled general rule in this jurisdiction that a writ of habeas corpus cannot be used for the purposes of a writ of error or other mode of appellate review and that it does not lie to correct mere errors in the proceedings below, provided only that the court whose judgment or sentence is challenged has jurisdiction of the subject matter and of the person of the defendant. (In re Abreu, 27 Haw. 237; In re Gamaya, 25 Haw. 414; In re Y. Anin, 17 Haw. 338; Ex Parte Smith, 14 Haw. 245;Ex Parte Fugihara Oriemon, 13 Haw. 102; In re Titcomb, 9 Haw. 131; In re Apuna, 6 Haw. 732.) Consistent therewith is the federal rule as enunciated by the Supreme Court of the United States that a writ of habeas corpus cannot be substituted for an appeal even in a case in which a defendant took no appeal. (Sunal v. Large, 332 U.S. 174; Adams v. United States exrel McCann, 317 U.S. 269.) Thus it has been uniformly held by circuit courts of appeals that convictions based on coerced confessions cannot for that reason alone be collaterally attacked by habeas corpus. (Smith v. United States, 187 F. [2d] 192;Eury v. Huff, 146 F. [2d] 17; Miller v. Hiatt, 141 F. [2d] 690; Young v. Sanford, 147 F. [2d] 1007; Burall v.Johnson, 134 F. [2d] 614; Cash v. Huff, 142 F. [2d] 60;semble, Vermillion v. *Page 171 Zerbst, 97 F. [2d] 347.) Other reasons in the form of exceptional circumstances, however, may permit habeas corpus to serve for an appeal. Such circumstances are ones "where the need for the remedy afforded by the writ of habeas corpus is apparent." (Bowen v. Johnston, 306 U.S. 19, 27.) Pertinent examples thereof are to be found in cases where matters outside the record have destroyed the essence of a fair trial or thwarted effective appeal; i.e. cases such as those of mob domination inMoore v. Dempsey, 261 U.S. 86, and Frank v. Mangum,237 U.S. 309; of perjured testimony in Mooney v. Holohan,294 U.S. 103, where the petitioner did not know of the alleged perjury until after appeal; and of coerced pleas of guilty inSmith v. O'Grady, 312 U.S. 329, and Waley v. Johnston,316 U.S. 101, where facts de hors the record were not open to consideration or review on appeal. But no need for the remedy afforded by the writ of habeas corpus exists where a defendant was represented by counsel and has litigated issues of coerced confessions to final determination in exhaustion of appellate remedy and where the defendant, with different counsel, seeks to relitigate and have redetermined on habeas corpus the same issues. Nor has any territorial, state or federal court permitted habeas corpus to relitigate and redetermine issues already litigated to final appellate determination. To do so would cause litigation in criminal cases to be interminable and bring confusion into the administration of justice. A defendant may not litigate issues at trial and on direct attack exhaust his appellate remedies, as Palakiko and Majors did in this case, and then supersede those remedies on collateral attack, by habeas corpus, concerning the same issues which are admissive of the jurisdiction of the trial court to determine them.
A comparable situation is depicted in Kaizo v. Henry,211 U.S. 146. That case is the closest in point and therefore the controlling authority. There a defendant was *Page 172 
indicted for murder in the first degree in a circuit court of the Territory of Hawaii. After indictment a plea in abatement was seasonably filed. After issue on the plea was joined, the parties agreed upon the facts. The plea with the agreed facts raised the question of the circuit court's jurisdiction. That question was certified to the supreme court of Hawaii, which answered it in the affirmative. (Territory v. Morita Kaizo, 17 Haw. 295.) Thereupon, the trial judge overruled the plea in abatement and an exception was taken. After trial the defendant was found guilty as charged and sentenced to death. He then prosecuted a writ of error to the supreme court of Hawaii, which affirmed the judgment of conviction in the lower court. (Territory v. Morita Kaizo,18 Haw. 28, 658.) He did not appeal from the supreme court's judgment of affirmance. A death warrant was issued by the governor of Hawaii fixing the date of execution. Six days before that date, the defendant filed a petition for habeas corpus in the supreme court of Hawaii, alleging that "the said circuit court had no jurisdiction * * * that the said indictment, pretended trial and conviction * * * and the said sentence, mittimus and death warrant * * * were and are * * * in violation of the Constitution of the United States, the laws of the United States and the laws of the Territory of Hawaii, and void," and based his claim for discharge from custody upon the same facts set forth in the plea in abatement and in the agreed statement of facts, already litigated to final appellate determination. (ExParte Morita Kaizo for Writ of Habeas Corpus, Sup. Ct. record No. 194.) Whereupon, the supreme court of Hawaii issued the writ. On return of the high sheriff, it discharged the writ without a hearing and remanded custody. (Ex Parte Morita Kaizo for Writ ofHabeas Corpus, supra.) To the judgment of the supreme court of Hawaii discharging the writ of habeas corpus, the defendant prosecuted writ of error before the Supreme *Page 173 
Court of the United States, which affirmed such judgment. (Kaizo v. Henry, supra.) The Supreme Court refrained from considering the question of jurisdiction as the principal one presented on error and pointed out that if the defendant desired its judgment upon that question "he should have brought a writ of error to the judgment of the Supreme Court of the Territory which passed upon it in affirming the judgment of conviction in the trial court." (Kaizo v. Henry, supra, p. 148.) It further pointed out on the same page that "where a court has jurisdiction, mere errors which have been committed in the course of the proceedings cannot be corrected upon a writ of habeascorpus, which may not in this manner usurp the functions of a writ of error."
No error in the admission of the confessions below is directly alleged and it is not contended that the trial court had no jurisdiction of the crime charged and of the persons of Palakiko and Majors. As to those confessions, the case of Palakiko and Majors is merely one of relitigation and redetermination of issues already litigated to final appellate determination. This court finds no occasion to redetermine those issues on habeas corpus, other than for the purpose of exposing the apparent attempt of the allegations of petition and traverse to clothe the case with a character which it does not have.
Illustrative of that attempt are the allegations of petition and traverse that the prosecution concealed from the trial court the facts concerning the manner in which the confessions were obtained. But such concealment, if any existed, would be attributable with greater force to Palakiko and Majors, who, at the close of the prosecution's case, rested their case. They did not take the witness stand to give their version of the manner in which the confessions were obtained or contradict the witnesses for the prosecution who gave their version subject to strenuous cross-examination *Page 174 
as well as to interrogation by the trial judge. It is evident from the record of trial that the allegations of concealment have no substance and are a mere subterfuge for evading the effect of orderly criminal prosecution and of appellate review. They call for a relitigation and redetermination of litigated and finally determined issues in displacement of the very trial itself and as a supersedure of appeal. Obviously, the aim of those allegations is to usurp the functions of a trial, as well as those of a writ of error. To carry out such objectives would not only be disruptive of judicial process in its largest sense but constitute an open sesame for perjury, as demonstrated by the very length of the hearing and by the character of testimony given by Palakiko and Majors in an attempt to save themselves from the gallows.
Palakiko testified at the hearing concerning his version of the manner in which his confession was obtained. His testimony briefly is that, when alone with a certain police officer, who at the instant hearing was absent from the Territory and not subject to subpoena but present and testifying at the trial, he was struck and beaten by that officer in the face with such force and violence that he was knocked against the wall of the office of the captain of detectives and hit his left forehead on the wooden frame of a large map fastened to that wall. He testified in substance that immediately after such beating and as a result thereof his forehead above both eyes was gashed, bruised, bleeding and swollen, and his left cheek bruised, swollen and scratched; that the gash over his left eye continued to bleed for several hours thereafter; that within a few minutes after such beating he commenced to make his confession at the police station and, while being questioned, continually wiped blood from his left eye; that within an hour after being beaten, he was photographed with police officers by newspaper photographers; that a few minutes after having been *Page 175 
photographed he was taken to the scene of the murder where he reconstructed the murder for the benefit of police officers and continued his confession; that during the time at the scene he frequently wiped blood from his left eye. He further testified that such force and violence impelled him to confess but admitted on cross-examination that his confession was freely and voluntarily made, although on redirect examination said that he was afraid of further beatings if he did not confess. The absent police officer, however, testified at the trial that he employed no force or violence whatsoever against Palakiko, and the other police officers who had custody of him and received his confession testified at the trial and hearing to the same effect. Nor did anyone, including newspaper reporters, observe blood, fresh cuts, gashes, scratches or swellings on his face at the times surrounding his confession. The best evidence that the face of Palakiko was not gashed, cut, scratched, bleeding, bruised or swollen, and hence not struck and beaten as testified by Palakiko, is the black and white negative and its glossy print and enlargement of Palakiko's face, which are exhibits for the petitioner. The photographer who photographed Palakiko within an hour after the purported beating identified those exhibits. He testified on cross-examination that the only blemish on Palakiko's face when photographed was "an old mark, scar or old injury" and that there were no "open wounds, cuts, bruises or any other signs of violence on his face." He further testified that he had "done a lot of clinical photographing for the Harvard University Medical School," that he had "plenty of time to observe" Palakiko when photographing him and that "anyone knows a photographer studies faces, particularly in police cases" and usually sees "if a fellow is beaten up." The enlarged glossy black and white print of Palakiko's face bears out the witness's testimony of the only facial blemish being an old scar partially bordering and a part *Page 176 
of the heavy eyebrow in the sensitive area just above the right eye socket. The reasonable inference from this evidence and testimony is that the glossy black and white enlargement so high lighted the face of Palakiko that it brought into bolder relief the old scar than otherwise would be the case and that only the trained eye of a clinical photographer, covering a police case for a newspaper, would be apt to notice such scar. (See Scott,Photographic Evidence, § 454, pp. 394, 399.) That inference is explanatory of the fact that most of the witnesses at the hearing did not recall noticing the scar, even though three years ago they were within a few feet of it and that Palakiko himself was not aware of it until recently when he saw photographs or newspaper reproductions. This court scrutinized Palakiko's face on close inspection, observed his demeanor and weighed his testimony in the light of all the evidence, and finds his testimony on the issues of coerced confession to be false.
Majors testified at the hearing concerning his version of the manner in which his three confessions were obtained. His testimony also singles out the same absent police officer. It charges that this officer when alone with him threatened to beat him and promised to charge him with second degree murder rather than first degree. He testified, however, that no force or violence was used against him to obtain his confessions but that the officer's threat and promise induced him to confess. Yet he did not mention such promise at the time of making his confessions although such threat is substantially the same as the one contained in his third confession. But that threat so contained therein was considered on appellate review and deemed not to have had a coercive effect. Moreover, both threat and promise as testified are denied by the testimony of the absent officer at the trial and that testimony was not discredited on cross-examination, the jury presumably *Page 177 
believing it under proper instructions of law. Purely collateral to such threat and promise, however, is the immaterial evidence that the absent officer had been reprimanded for misconduct in cases other than those of Palakiko and Majors, that a charge of second degree murder had been made against Palakiko and Majors, and that the acting public prosecutor at the time of the murder had released to the press for publication his opinion to the effect that murder in the second degree was the only charge warranted. That evidence is incompetent to prove the making of threat or promise even though it may have inspired Majors to reiterate the threat and say that the promise had been made. In this connection, it is significant that Majors testified that he made his third confession to another officer because he wanted to tell the truth and there is every indication from all the credible testimony that Majors made all his confessions freely and voluntarily for the same reason. This is borne out by the coherent and lucid language of his confessions and by the fact as found by this court that he talked freely, without solicitation, about facts and circumstances surrounding his crime before the purported threat and promise were made and when the officer who purportedly made them was not present. Moreover, Majors freely testified at the hearing that, on recapture after the murder and before confessing to it, he had taken iodine in an attempt to take his own life and had intended to repeat that attempt at the first opportunity. Paradoxically, he now attempts to save his life and has the strongest possible motive for doing so. It is proper in determining his credibility to consider his character as a confessed murderer and to weigh his testimony with the opposing testimony of police officers who are duty bound to uphold law and order. On doing so, this court finds that the testimony of Majors on the issues of coerced confessions is not credible and that *Page 178 
he confessed to murder in the same manner that he testified to his attempt to take his own life.
On review of the entire record of hearing and trial, this court further finds that there was no force, violence, duress, threats, misrepresentations or promises of immunity or reward made to obtain the confessions of either Palakiko or Majors and afortiori no concealment thereof at the trial. It also finds that the confessions were made voluntarily consonant to constitutional guarantees. Nor is there any indication that the testimony, on which the confessions were determined to be voluntary at the trial, is perjured and discovered to be such after trial so as not to have been open to consideration or reviewed on appeal. On the contrary, the hearing conclusively establishes such trial testimony to be credible, substantial and sufficient to warrant the admission of the confessions into evidence as the basis for conviction as determined on appellate review.
The traverse by amendment further attempts to clothe the case of Palakiko and Majors with a character comparable to that of mob domination cases. It alleges that "they were denied a fair trial and due process of law in that the atmosphere of public clamor for their indictment, conviction and execution for first degree murder, speedily, without sufficient time to prepare for their trial, brought about by the public feeling and newspaper reports of the offense of which they were charged, predetermined their guilt and that such public feeling and inflammatory newspaper articles were of such kind and character that it was impossible to secure on their behalf a fair and impartial grand jury, and a fair trial with fair and impartial jurors." Those allegations apparently purport to bring the case within the exceptional circumstances recited in the concurring opinion of Mr. Justice Jackson in the recent case of Shepherd v. Florida,341 U.S. 50. That case is one on direct attack of the conviction of rape, where newspapers *Page 179 
on press release from constituted authorities widely published as a fact that the defendants had confessed and no authority publicly retracted that release. The nature of the crime naturally stirred deep feeling, which the press exploited to the limit and called for the supreme penalty. Mob violence was rampant throughout the community. A mob burned the home of one defendant's parents, as well as the homes of others. Another mob demanded that the defendants be turned over to it. The defendants had to be transferred to the state prison to prevent lynching. At their trial no confession was offered. Yet the publicized confession in all probability influenced both witnesses and jurors who said they had read or heard that the defendants had confessed. Mob spirit so pervaded the courtroom at trial and prejudged the defendants guilty that "the trial was but a legal gesture to register a verdict already dictated by the press and the public opinion which it generated." Such circumstances as well as those in other mob domination cases are, however, the antithesis of the circumstances in the instant case. In even more exceptional circumstances than those of this case an application for a writ of habeas corpus has been denied. (Carruthers v.Reed, 102 F. [2d] 933.) In the instant case newspapers reported the fact that the defendants had confessed, as indeed they had. Numerous newspaper reports, articles and editorials, therefore, assumed the guilt of the defendants and characterized them as slayers and killers. Most of this comment, however, was directed against the crime itself and the laxity of prison officials in allowing dangerous prisoners the opportunity of escape. Irrespective of whether such comment be classed as fair or otherwise, a point not here in issue, there is no evidence that it so aroused public feeling against the defendants that a change of venue became necessary or had the effect of intimidating or prejudicing any witness or juror at the trial. The voir *Page 180 dire was conducted by counsel, under supervision of the trial judge, in full exercise of statutory rights of examination and challenge for cause and of peremptory challenge. Three panels, totaling more than a hundred men, were exhausted. A reasonable presumption therefrom is that all disqualified prospective jurors were effectively screened from the trial panel and that only qualified ones were ultimately impaneled and sworn to try the case. The confessions were offered at the trial. The defendants not only were confronted with the witnesses identifying the confessions, but strenuously cross-examined such witnesses and had the unimpaired right to contradict them. Such confessions were introduced into evidence over defense objection and submitted to the jury under proper instructions of law. The trial patently was conducted in a calm and judicial atmosphere and in a circumspect and orderly manner. Nor was there any sign, threat or fear of mob violence or any suggestion of mob spirit within the community. Indeed no semblance of a mob existed from the time of murder to the end of trial, or at any time, and no other influence that in any way impaired the securing of a fair and impartial trial, or that in any way affected the prosecuting authorities, the grand and petit juries, and the defense attorneys in carrying out their duties, or prevented a full and proper presentation of any defense.
The record of trial proceedings conclusively refutes the allegations of petition and traverse that Palakiko and Majors were denied the right of an accused person in a criminal prosecution "to have the Assistance of Counsel for his defence." (U.S. Const., Sixth Am.) Likewise do the circumstances above outlined refute the contention of petitioner that such assistance was not effectively rendered. As already indicated, Palakiko and Majors had the assistance of counsel for their defense from three able and competent attorneys. The petitioner admits the ability and *Page 181 
competency of those attorneys who represented Palakiko and Majors from more than forty-five days before trial, throughout trial and on two successive appeals. They had more than ample time to prepare a defense and announced their readiness for trial at the time of the trial. They conscientiously represented their clients at every stage of the proceedings and took full opportunity to cross-examine the prosecuting witnesses on the issues of coercion and properly preserved their objection to the admission of the confessions. They followed a course of procedure at the trial, which they determined to be for the best interests of the defense of Palakiko and Majors, by not placing either one of them on the witness stand. Nor can it be said with reason that they did not act wisely in the light of the character of testimony given by Palakiko and Majors at the instant hearing. Palakiko and Majors on their trial thus had effective assistance of counsel for their defense and were not deprived of their constitutional right thereto. (See Sykes v. Sanford, 150 F. [2d] 205; Merritt v.Hunter, 170 F. [2d] 739.)
The petitioner did not purport to prove, other than by inference or innuendo, the allegations of the amendment and those allegations require no further consideration. Suffice it to say that the hearing conclusively establishes that Palakiko and Majors received a fair and impartial trial without any exceptional circumstances or subversive influences that might tend to drain away its substance or thwart effective appeal.
The traverse by further amendment attacks the conviction on the grounds (1) that the first count of indictment, which charges murder while committing rape, and the second count, which charges murder while attempting to commit rape, are "mutually exclusive," and (2) that the evidence adduced at the trial is insufficient to support the verdict on all three counts, particularly on the first *Page 182 
two. This court finds no merit in either ground of the amendment. As to the first, each ground of the indictment charges but one alternative means of committing the same crime of murder in the first degree within the language and statutory definition of that crime (R.L.H. 1945, § 11392) and of necessity none can be mutually exclusive of another. This is made clear by the judicial pronouncement of this court that "Our statute does not create distinct offenses of murder in the first degree, but one offense, one crime, which may be committed by any of the means described in the statute which, if proven, constitute the same felony. It is the same transaction." (Rep. Haw. v. Yamane, 12 Haw. 189, 201.) As to the second ground of the amendment, it is but an attempt to subvert habeas corpus proceedings into a supersedure of two appellate reviews which sustained the sufficiency of the evidence as well as the admissibility of the confessions. Under the principles already set forth in this opinion that attempt is abortive.
Under the same principles so is the traverse, which alleges in substance that the confessions were obtained after arrest during unlawful detention due to a denial of rights of arrested persons as provided by statute (R.L.H. 1945, § 10709) and therefore inadmissible within the rule laid down in McNabb v. UnitedStates, 318 U.S. 332, as expounded in Upshaw v. UnitedStates, 335 U.S. 410. But Palakiko and Majors had not been arrested for or charged with the murder when the confessions to that crime were made. Nor were they arrested persons entitled to statutory rights afforded to such persons. On the contrary, they were convicts recaptured and brought back to lawful detention after escaping from a prison road gang. The mere fact that the confessions were made while in the custody of the police did not render them inadmissible. (Territory v. Chung Nung, 21 Haw. 214; McNabb v. United *Page 183 States, supra, p. 346.) Nor would the mere denial of statutory rights for arrested persons render those confessions inadmissible. "Complete protection is afforded the civil rights of an accused who makes an involuntary confession or statement when such confession must be excluded by the judge or disregarded by the jury upon proof that it is not voluntary. * * * An extension of a mechanical rule based on the time of a confession would not be a helpful addition to the rules of criminal evidence." (United States v. Carrignan, 342 U.S. 36, in which the Supreme Court of the United States declined "to extend the McNabb fixed rule of exclusion to statements to police or wardens concerning other crimes while prisoners are legally in detention on criminal charges.") But the McNabb rule, as a judicially created federal rule of evidence involving a federal commitment statute, has no application, even in a federal case, to confessions concerning a crime committed by convicts during their temporary escape from prison, while as here such convicts were legally in detention after being recaptured without being arrested for or charged with the crime when those confessions to that crime were made. The underlying reason for that rule is to abolish unlawful detention of arrested persons charged with a crime when that detention is used as a pretense for eliciting illegal confessions. None of the concomitants of that rule is present here and the instant case clearly falls outside the reason for the rule. Nor could such rule have been successfully invoked in this case on direct attack by writ of error (seeUnited States v. Carrignan, supra; Gallegos v. Nebraska,342 U.S. 55), and certainly cannot be so invoked on collateral attack by writ of habeas corpus.
There remains to be considered the unconstitutionality of the statute on which is based the conviction. The ground thereof is set forth in Application of Palakiko and *Page 184 Majors, 39 Haw. 134. On the principles therein enunciated this court declares the statute constitutional. Nor have any authorities been presented to the contrary and this court has found none that even adumbrates, much less overcomes, the strong presumption of constitutionality of the statute which has been on the statute books of the Territory for over sixty years and on those of Massachusetts for over ninety years, without the validity thereof being questioned before the appellate court of either jurisdiction, but with its meaning having been interpreted consistently by those courts.
Against their conviction Palakiko and Majors have made a devious and many-sided attack. Despite the insufficiency of petition and traverse, they have been afforded a full and fair hearing into every conceivable avenue of inquiry. But they have signally failed to show that their conviction is void.
Petition denied, writ discharged and prisoners remanded to custody of respondent.